**Robert E. FOSTER and Laura Foster, Appellants (Plaintiffs),**

**v.**

**Loraine WICKLUND, as Personal Representative of the Estate of Mayme I. Lestum, Deceased, Appellee (Defendant).**

**No. 88–279.**

Supreme Court of Wyoming.

July 31, 1989.

Kaye Willis, Laramie, for appellants.

John B. Scott of Smith, Stanfield and Scott, Laramie, for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

URBIGKIT, Justice.

A real estate development plan controversy intermixing residential and commer-

cial usage created this litigation between the estate of the developer and the purchaser of residential homesite lots. Issues of proper party and mootness are presented for review in this factually simple, although litigatively complex proceeding.

Appellants assess their issues as whether:

I. * * * the Estate of Mayme I. Lestum [developer] was a proper party to this action?

II. * * * Mayme I. Lestum breached her contract with the appellants [homesite occupants]?

Restated, appellee Loraine Wicklund (Wicklund) as personal representative of the Estate of Mayme I. Lestum adds that "Appellants' claim against the Lestum Estate is moot." [1]

These properties are in the small mountain community of Woods Landing near the Colorado border in Albany County, Wyoming. Mayme I. Lestum developed a subdivision with a resale system based on 99–year lease arrangements.[2] Appellants Robert E. Foster and Laura Foster (Foster) acquired four lots within the developed area by a 1973 conveyance instrument for use to provide access to other lands which they owned. The conveyance instrument provided in part:

There shall be no business of any kind operated or conducted in this area.

* * * No services, for which remuneration is received, shall be conducted on these premises, or result from the occupancy of the premises.

\* \* \* \* \* \*

* * * Lots located between the highway and the river are to be used for houses only.

Foster then explained the next developments by statement in appellate brief:

In 1978, Appellants leased a small 150' × 100' lot from Mrs. Lestum located across Highway 10 immediately west of their property for the purpose of a summer home for their daughter. The lease, like all the others in the area, was a 99–year residential lease. A year later, Mrs. Lestum refused Appellants' rent money on the lot leased for their daughter. She had leased the same lot and the surrounding five acres to Robert and Wanda Dowdy for the purpose of a log-peeling business, B & W Forest Products. Using the same standard lease form, Mrs. Lestum and/or Mr. Dowdy crossed out all clauses relating to residential property and entered into a ten-year business lease.

Within a context of a somewhat abbreviated record, it is apparent that Robert J. Dowdy and Wanda Dowdy (Dowdy) and their lumbering business, B & W Forest Products, came into conflict with Foster, including contention of trespass and maintenance of nuisance. Foster objected to the business lease arrangement periodically and expressively.

Following a 1987 notice of and request to abate nuisance, Foster, in January 1988, filed this lawsuit against Wicklund as personal representative of the Estate of Mayme I. Lestum and Robert J. Dowdy and Wanda Dowdy, both individually and doing business as B & W Forest Products. In the three count complaint, Foster alleged that the maintenance of the sawmill was a nuisance and was in violation of the provisions of the Foster lease, a similar nuisance claim was made against Dowdy and, in count three of the complaint, claim

1. In broad perspective, appellants present an appeal from the trial court proceeding which includes three stages:

   1. Dismissal of the developer from the litigation—claimed to be an erroneous improper party decision;

   2. Proceeding mooted when settlement made with the offending occupant of a lot by terminated use and discontinued tenancy; and

   3. Substantive decision by the trial court validating the "terminated lease."

Appellants pretermit the mootness question to attack both dismissal and substantive decisions. Conversely, appellee defends the decision in trial court through substantive decision and interjects mootness for appeal, but not to invalidate the substantive judgment entered after she was no longer a party and when the controversy had already ended with lease termination.

2. Pursuant to W.S. 34–1–102, the 99–year lease constitutes a conveyance of real estate.

was made against Dowdy for trespass, with a prayer requesting:

1. That the Court order the immediate abatement and removal of the business known as B & W Forest Products.

2. That the Court enter judgment against the Defendants and each of them, jointly and severally, in the sum of $200,000 for damages to Plaintiff's quiet enjoyment or such other sum as a jury may deem sufficient.

3. That the Court enter an Order of Permanent Injunction as will forbid B & W Forest Products, their employees or agents from trespass upon Plaintiff's property.

First occurring in the course of case development was a dismissal of the claims against the Estate of Mayme I. Lestum by order of the trial court on the basis that the personal representative was "not a proper party." The June 21, 1988 decision letter stated in part:

First of all, the Court cannot see any basis for requiring Loraine Wicklund as personal representative of the Estate of Mayme I. Lestum, deceased, to continue to defend this case. The Estate is not a proper party, either necessary o[r] appropriate and should be dismissed for all purposes.

The dismissal occurred without request in pleading, except for the pro forma defense of failure to state a claim contained in Wicklund's answer. Following the dismissal of Wicklund from the litigation, settlement between Dowdy and Foster was achieved by a stipulation to resolve all issues in their part of the lawsuit as correlated to agreed expiration of the Dowdy lease. In dispositive part, the stipulation provided:

1. Each of the parties specifically represents that this Stipulation and Consent has as its sole purpose the amicable settlement of their dispute with respect to the operation of B & W Forest Products.

2. This Stipulation and Consent has been made as a result of representations each to the other concerning the noise and disturbance generated by the operation of B & W Forest Products. Each party has been represented by legal counsel and each understands the force and effect of this Stipulation and Consent, and the provisions contained herein. Each party executes this Stipulation and Consent of his or her own free will with the intention that it be binding as long as B & W Forest Products operates in its present location which is directly across Highway 10 from Plaintiffs' residence. The parties agree that this Stipulation and Consent will be submitted to the District Court and incorporated into an Order which will constitute a complete settlement between the parties with respect to the operation of B & W Forest Products.

* * * Defendants have notice that the Mayme Lestum Estate does not plan to renew the ten-year lease to B & W Forest Products that will expire on January 17, 1990. Accordingly, Plaintiffs agree that the log peeler need not be moved back away from the highway as agreed on July 11, 1988. However, Defendants agree that if a new site for B & W Forest Products is not found before January 17, 1990, Defendants will on that date cease operation of B & W Forest Products at its present site.

Following the June 1988 dismissal of Wicklund from the lawsuit and the October settlement between Foster and Dowdy, the trial court held in its dispositive judgment that:

1. The Estate of Mayme Lestum is not a proper party to this action.

2. The priority of the Dowdy–Lestum business lease is not affected by the language of nearby residential leases.

3. The Stipulation and Consent entered into by Plaintiffs and Defendants Robert and Wanda Dowdy constitutes a fair and equitable settlement of the remaining issues in this action.

This final judgment, designated Order Incorporating Stipulation and Consent and Order of Final Settlement, filed October 13, 1988, effected a dismissal of the remaining issues of the lawsuit and constituted the final court action from which the present appeal is now taken. Foster appeals by first attacking the conclusion that the es-

tate was an improper party and then objects to trial court finding number two.[3] We are less than assured whether the second word of that clause is typographically misstated and should have been "propriety" rather than "priority" but, for the purpose of our decision, either term will be deemed applicable with no difference in concept now presented in present appellate briefing by any party.

■ It is clear by observation that any litigable controversies between Dowdy, individually, the lumber operation and Foster had been settled in full. Whether successors in interest to the estate property ever make another business lease for the property is hypothetical and calls for an advisory opinion as to what its potential effect might be for whatever lease might be made. No party is present in this litigation by the pending appeal which would necessarily be involved in any future lease after completion of the probate of the Estate of Mayme I. Lestum. Factual status of the litigation after stipulated settlement between Foster and Dowdy and cancellation of the Lestum/Dowdy lease is accurately assessed by Wicklund in a discussion in appellate brief of mootness:

> It should be noted that having actually resolved the issue of the continuation of the business, Appellants now contend that their "primary goal" is to determine whether or not the "promises" in their lease are enforceable. * *. * Appellants even go so far as to state that they are interested in whether future businesses could be located across the highway from their residence. Not only was this issue not raised in the Complaint, but it asks this Court to speculate as to any future potential use of the property in question[ ].

First, nothing remained to litigate in the first clause of the complaint prayer in order to abate the B & W Forest Products

business. That issue was settled. Likewise, in third claim, the need or propriety of an injunction was also foreclosed. The nonexistent business could neither be abated nor enjoined and the lease would shortly end by amicable agreement. Inquiry then remains whether the claim in the second paragraph of the prayer remains viable:

> 2. That the Court enter judgment against the Defendants and each of them, jointly and severally, in the sum of $200,000 for damages to Plaintiff's quiet enjoyment or such other sum as a jury may deem sufficient.

Obviously, this issue between Foster and Dowdy had also been resolved in the stipulation. The quandary we are presented is disposition without settlement as to the estate and its personal representative, Wicklund, earlier excused from the litigation by her dismissal as an improper party.

■ Before relating this case status to Foster's arguments, it is beneficial to review the historical posture adopted by this court about advisory opinions and mootness disposition. We are called to revisit *Graham v. Wyoming Peace Officer Standards and Training Com'n*, 737 P.2d 1060 (Wyo.1987) which is surprisingly similar to this appeal. In *Graham*, the litigant had no covered employment, and in this case, no offending lease exists. If we are to pursue contended violations of the subdivision plan, there is nothing except future possibilities which could define a controversy as only to become existent if an offensive use should occur. In *Graham*, 737 P.2d at 1062–63, we defined the settled structure of Wyoming law:

> This court has repeatedly said that it will not issue advisory opinions. *State ex rel. Schwartz v. Jones*, 61 Wyo. 350, 157 P.2d 993 (1945) is directly in point and controlling. See also *Northern Utilities, Inc. v. Public Service Commission*

---

3. It may be that we misapprehend the primary concerns which caused Foster to present this appeal. In accord with our discussion of mootness which will hereafter determine this appeal and avoid our consideration of the substantive issue of any use limitation on the Dowdy lot by virtue of other documents in subdivision building scheme questions, see 7 Thompson on Real Property § 3163 at 125 (1962), we do not find validity in trial court finding number two since the Estate of Mayme I. Lestum had been dismissed and the effect of the stipulation was to terminate the Dowdy lease. It was a decision lacking litigants or issues when included in the judgment. *Wyoming Health Services, Inc. v. Deatherage*, 773 P.2d 156 (Wyo.1989).

*of Wyoming,* Wyo., 617 P.2d 1079 (1980); *Belondon v. State ex rel. Leimback,* Wyo., 379 P.2d 828 (1963); and *Cheever v. Warren,* 70 Wyo. 296, 249 P.2d 163 (1952).

We have last restated this principle in 1985, in *Gulf Oil Corporation v. Wyoming Oil and Gas Conservation Commission,* Wyo., 693 P.2d 227, 233 (1985):

"We have often repeated the universal rule that a reviewing court will dismiss a case when, pending appeal, an event occurs which renders a cause moot and makes a determination of the issues unnecessary. *Northern Utilities, Inc. v. Public Service Commission of Wyoming,* Wyo., 620 P.2d 139, 140 (1980); *State ex rel Schwartz v. Jones,* 61 Wyo. 350, 157 P.2d 993, 995 (1945). Appellate courts will not hand down decisions which cannot be given effect or which pertain to matters that may arise in the future. *Northern Utilities, Inc. v. Public Service Commission of Wyoming,* Wyo., 617 P.2d 1079, 1085 (1980); *Belondon v. State ex rel. Leimback,* Wyo., 379 P.2d 828, 829 (1963)."

Our review of the mootness deterrent to continued litigation was further reconsidered not only in *Ballard v. Wyoming Pari–Mutuel Com'n of State of Wyo.,* 750 P.2d 286 (Wyo.1988), but also in the three handicapped children education cases, *Natrona County School Dist. No. 1 v. McKnight,* 764 P.2d 1039 (Wyo.1988); *State v. Cochran,* 764 P.2d 1037 (Wyo. 1988); and *Natrona County School Dist. No. 1 v. Ryan,* 764 P.2d 1019 (Wyo.1988). *See also Honig v. Doe,* 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988), Justice Rehnquist concurring and Justice Scalia dissenting. In this appeal, we have neither the identity of parties nor the probability of reoccurrence.

Evaluation of a mootness status initially embraces the consideration of a future lease not yet executed and secondly, the prayer for damages. With discontinuance of the business use and an unknown future for events and parties, no arena remains which would provide for a case or controversy, except a potentiality which we are asked to anticipate by rendering an advisory opinion. Any future controversy regarding disputes as to business use of the property previously occupied by the lumber business must be solidified from issues then developed with whoever may then be the contesting litigants. We determine that with the termination of the contested lease and settlement between Foster and Dowdy, no justiciable issue of subdivision "plan" and violation of covenants for quiet enjoyment, if any, remain. We will not anticipate by advisory opinion any existence or non-existence of impedance to whatever future use of Lestum "subdivision" properties develop.[4]

Unfortunately, this does not end our appellate journey. Recognizing that the initial complaint did include both injunction and damage, we are challenged by Foster to find a proper basis to sustain the conclusion of the trial court that Wicklund was also not a proper party as to a damage claim. That remaining problem would involve the estate as a successor to obligation of the lessor/developer. At the stage of the litigation when it occurred, the decision of the trial court to dismiss Wicklund was clearly erroneous, since she was the only proper party for either assessment of liability from continued use of the property or continued maintenance of an alleged nuisance. These damage claims considering the contention of violation of the development plan by intermixing a business lease or previous damage from violation of a covenant of quiet enjoyment could only be adjudicated against the personal representative of the estate. In this conclusion, we agree with Foster. See W.S. 2–7–104, which provides:

Actions for the recovery of any property, real or personal, or for the possession thereof, or for the destruction, wasting, conversion, injury, taking or carrying

---

**4.** It does not appear that the project was statutorily subdivided by a filed plat. Legal descriptions shown are by metes and bounds and are referenced to quarter section subdivision descriptions. See W.S. 34–12–102.

away thereof, or to quiet title thereto, or to determine any adverse claim thereon, and all actions founded upon contract, may be maintained by and against the personal representative in all cases in which the action might have been maintained by or against their respective testators or intestates.

*See also* W.S. 2–7–706, 1–4–101 and 1–4–102, which relate to the survival of causes of action and W.S. 2–7–718, providing for suit against the personal representative. *Johnson v. Wold,* 475 P.2d 714 (Wyo.1970); *Castor v. Rice,* 71 Wyo. 99, 254 P.2d 189 (1953). In this case, a claim had been filed with the personal representative and duly rejected before the lawsuit was commenced.

Following rendition of the decision letter to remove Wicklund, entry of the official order was delayed to permit briefing of Wicklund's proper party status. Responsive to the opportunity, Foster stated in part:

> Plaintiffs assert that Mayme Lestum breached two separate contracts: (1) She leased to B & W Forest Products the same land already leased to Plaintiffs, and (2) she breached the provisions in Plaintiffs' first lease which promised no businesses in the area. Plaintiffs, therefore, have grounds for an action against Mayme Lestum and therefore, against her estate.

In present appellate brief, Foster's contentions are addressed:

> A particularly harassing trespass by the employees of B & W provoked Fosters to seek relief through the judicial system. They asked for damages from the Lestum Estate in the event that B & W continued to operate and they were forced to relocate. Their primary goal is to determine whether or not the promises in their lease are enforceable. If the lessor (or the lessor's estate) is dismissed as a Defendant to the action, Appellants have no remedy.

The nuisance issue was resolved to Appellants' satisfaction when B & W agreed to move the log peeler back away from the highway, thus lessening the noise. Appellants find it interesting that the Estate chose the very next day to inform B & W that the business lease would not be renewed in 1990. However, Appellants are interested in determining whether future businesses could be located across the highway from their residence. If the Estate is dismissed as a party, Appellants will have no way to determine their rights under their lease.

No argument is now postulated by Foster that they seek to return to the initial lawsuit to continue claims for damages against the developer and her estate for loss of quiet enjoyment or nuisance adversity in times now passed. The reach of the appeal is prospective and we have not only an interpretive relation to a future lease, but damage issues which would invoke diminution of quiet enjoyment resulting from that hypothetical future lease. Clearly, what might occur in the future is not now validly presented as an actual issue invoking a case in controversy. Furthermore, we are not justified in reversal of the trial court to resurrect rights to claim damage for past wrongs. Lacking claim for past damages, nothing remains for our adjudication as present issues in controversy.[5] *Graham,* 737 P.2d 1060. *See also Wyoming Health Services, Inc. v. Deatherage,* 773 P.2d 156 (Wyo.1989).

Affirmed.

---

**5.** The legal questions detailing litigant preclusion to continue an action against the landlord after settlement with the tenant who provided the offending use will also not now be addressed in this forum; albeit interesting, but neither briefed nor dispositive.