Dorothy M. McLAIN;  Margo L. Nelsen; and David A. Nelsen, Appellants (Plaintiffs),

v.

Jerry A. ANDERSON and Faith K. Anderson, Husband and Wife, Appellees (Defendants).

No. 96–21.

Supreme Court of Wyoming.

Feb. 19, 1997.

Brian N. Beisher of Hart & Reiter, Sheridan, for Appellants.

Micheal K. Shoumaker of Northern Wyoming Law Associates, Sheridan, for Appellees.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN JJ.

THOMAS, Justice.

Dorothy M. McLain, Margo L. Nelsen, and David A. Nelsen, some of the neighbors (neighbors) of Jerry A. Anderson and Faith K. Anderson (Andersons), instituted this action to enjoin claimed violations of certain restrictive covenants attached to a rural subdivision. They also sought to recover a $25.00 per day penalty together with attorney fees. Both attorney fees and the continuing penalty are provided for in the covenants. The neighbors assert that the trial court erred in construing the term "residence" as being a "lot" in the paragraph of the covenants relating to keeping livestock. In addition, the neighbors assert error on the part of the trial court in denying them attorney fees and the $25.00 per day penalty in connection with their claims against the Andersons. We hold that any error on the part of the trial court in its ruling that the developer intended the covenant relating to livestock to relate to a lot and not a residence that might exist on several lots has become moot because of an amendment of the covenants. We hold that there was no abuse of discretion in refusing attorney fees to the neighbors in this case, and the provision for a continuing penalty was a cumulative and discretionary sanction provided for the benefit of the collective landowners through the Architectural Committee. It was not intended to benefit individual owners who sought enforcement of the covenants. The Judgment entered in the trial court is affirmed.

The Brief of Appellants, filed by the neighbors, states the issues as follows:

A. Whether the District Court abused its discretion and ruled contrary to law by interpreting the term "residence" to mean "lot" as such term is used in the Restrictive Covenants of the Sherri View Subdivision, Article II, section 14.

B. Whether the District Court abused its discretion and ruled contrary to law in refusing to allow Appellants to recover from Appellees the attorney's fees and costs incurred by Appellants in bringing the action to compel Appellees to conform to the Restrictive Covenants of the Sherri View Subdivision.

C. Whether the district court abused its discretion and was in error when it ignored Appellants' request by not taxing and giving no reason for not taxing Appellees twenty five dollars ($25.00) per day from the date of notice to them that they were in violation of the Restrictive Covenants of the Sherri View Subdivision.

The Andersons, in their Brief of Appellees, respond by stating these issues:

1. The Judge did not err in interpreting the term "residence" to mean "lot" as used in Article II, Section 14 of the Covenants.

2. The District Court did not err by refusing to grant attorney fees.

Without raising further issues, a reply brief of the neighbors addresses the arguments raised in the Andersons' brief by a lengthy itemization of those arguments as perceived by the neighbors.[1]

---

1. In the Reply Brief of Appellants, the neighbors claim to have captured the arguments presented in the Brief of Appellees by restating them as:

    A. Appellees contend Appellants brought suit against the Appellees and no other lot owner.

The parties to this case own lots in the Sherri View Subdivision in Sheridan. The lots in the subdivision are subject to restrictive covenants that have been amended or restated at least four times since they were initiated on June 20, 1979. The last amendment occurred subsequent to the entry of the judgment of the trial court in this case.

The restrictive covenants in effect at the time this action was commenced, established an Architectural Committee composed of the Declarants of the restrictive covenants or their successors and assigns. To the Architectural Committee was delegated "all discretionary control over design, construction, maintenance and all other matters as set forth more particularly in these Covenants." On October 13, 1994, Margo Nelsen, on behalf of the Architectural Committee served notice on Faith Anderson that the Andersons' use of their lots was in violation of the restrictive covenants.[2] About a month and a half later, the neighbors brought this action to enforce the restrictive covenants, alleging that the Andersons had refused to correct the violations of which they had been notified.

In its Judgment entered after trial, the district court relied upon covenants that it concluded were ratified after an amendment in October 1995. It noted that the evidence indicated covenant violations may exist on the lands of non-parties to the action, and the Architectural Committee had not strictly enforced the covenants. The court did recognize the standing of the neighbors to bring the action, and it ruled that the term "residence" should be construed to mean "lot" in so far as it related to the keeping of livestock. The court held that the Andersons had not violated a covenant by keeping two horses per lot on their property. The court did find, however, that the Andersons had violated several other covenants, such as maintaining an excess amount of trash on their property and not parking their trailers and a camper in a prepared location.

The relief afforded by the district court enjoined the keeping of more than two horses at a time on any subdivision lot; required the Andersons to remove or provide covenant approved covered storage for specified items that it had held were kept outside of the Anderson's buildings in violation of Article II, Sections (XII) and (XV) of the covenants; required the Andersons to correct the violations within forty-five (45) days, making their failure subject to damages at the rate of twenty-five (25) dollars per day; required the Andersons to park their trailer and camper in accordance with the covenants; and made

---

B. Appellees argue Appellants' action is barred due to the theories of waiver and acquiescence, and possibly laches and estoppel.

C. Appellees assert that their covenant violations are not actionable due to changed circumstances in the neighborhood whereby other lot owners are violating the same or similar covenants.

D. Appellees allege that their covenant violations were "grandfathered" and they were given permission to violate the covenants with regard to their four horses.

E. Appellees vaguely allude to the garage/residence structure located on Appellants', Dave and Margo Nelsen's, property as a possible violation of the covenants.

F. Appellees raise a number of issues with regard to Appellants' request for the recovery of attorneys fees, and Appellants believe Appellees' argument is as follows:

　1. The trial court determined the award of attorney's fees and costs to Appellants was unwarranted due to the circumstances of the case, and Appellees allege it is within the trial court's purview to so decide based on the trial court's authority to assess the reasonableness of attorney's fees and costs;

　2. Appellees contend the submission of the amount and breakdown of Appellants' attorney's fees and costs was improper and allowed Appellees no opportunity to object;

　3. Appellees argue it would be proper to apportion the attorney's fees and costs incurred based on:

　　a. The Jackson's withdrawal as a party; and

　　b. The number of covenant violations found.

G. Appellees contend that Appellants should not be able to avail themselves of the penalty provision found in the covenants.

**2.** In particular, the Andersons were notified that they violated the restrictive covenants in that they had an excess amount of trash on the lots; they had too many horses and a barking dog at their residence; they had erected a fence on the property without the permission of their neighbors; they had an unregistered vehicle on one lot; they had a camper on their property in excess of four days: and they had erected a shed in direct violation of the covenants.

each of the parties responsible for their own attorney's fees. In its Judgment, the district court did not award attorney's fees to the neighbors nor did it impose damages at the twenty-five (25) dollars per day rate authorized by the covenants.

The neighbors claim that the trial court erred in construing "residence" to mean "lot" in the covenant relating to the keeping of livestock. The pertinent language of Article II, paragraph (XIV) (emphasis added) stated:

> No birds, dogs, pets, animals or livestock of any kind shall be kept, raised or cared for on a commercial basis within the subdivision. No swine, cattle, sheep, goats, or other livestock shall be permitted to be kept within the subdivision **except that up to two horses per residence may be kept** if adequate supplemental feed is provided to prevent overgrazing and erosion or related problems, and express consent of the Architectural Committee is first obtained.

Subsequent to the entry of the Judgment, it appears that the owners of property in the subdivision amended the covenant language.[3] As amended, Article II, paragraph (XIV) (emphasis added) reads:

> Birds, dogs, pets, animals, or livestock kept as outside pets may be raised and kept except on a commercial basis within the subdivision **EXCEPT that only two (2) horses per lot OR two (2) cows per lot OR six (6) goats per lot OR six (6) sheep per lot OR an acceptable combination of the above NOT to exceed six (6) total animals may be kept.**

■ Our rule is that we dismiss a case if, during the pendency of an appeal, an event occurs that causes the case to become moot or makes a determination of the issues unnecessary. *Van Riper v. State*, 882 P.2d 230, 238 (Wyo.1994); *Davidson v. Sherman*, 848 P.2d 1341, 1348 (Wyo.1993). We do not decide cases or issues when the decision cannot be given effect or simply pertains to matters that might arise in the future. *Fos-*

*ter v. Wicklund*, 778 P.2d 118, 122 (Wyo. 1989); *Gulf Oil Corp. v. Wyoming Oil and Gas Conservation Com'n*, 693 P.2d 227, 233 (Wyo.1985). When the determination of a matter is sought which, if provided, cannot have any practical effect on the existing controversy, the case is moot. *Rocky Mountain Helicopters, Inc. v. Air Freight*, Inc., 773 P.2d 911, 924 (Wyo.1989). Because the residents of the Sherri View Subdivision have adjusted the covenants so that they conform with the Judgment of the trial court, expressly providing that each resident may have up to two horses per lot, that issue in this case is moot.

The second claim of error by the neighbors is that the trial court abused its discretion in refusing to award attorney's fees, after holding that the Andersons had violated some of the restrictive covenants relating to the subdivision. The pertinent language in Article VI of the restrictive covenants reads:

> In the event suit is required to collect any sums due, or to enjoin the violation of any of the covenants contained herein, violator, in addition to any of the other penalties provided herein or which may be assessed by a Court, shall be liable for all attorney's fees and costs incurred by Owner or its successor in bringing such action.

■ We follow the American rule that each party in a lawsuit bears its own attorney's fees in the absence of an expressed contractual or statutory provision for attorney's fees. *Snodgrass v. Rissler & McMurry Co.*, 903 P.2d 1015, 1017 (Wyo.1995). *UNC Teton Exploration Drilling, Inc. v. Peyton*, 774 P.2d 584, 594 (Wyo.1989). Pursuant to this rule it is generally recognized that attorney's fees cannot be recovered in the absence of specific statutory authority or a specific contract provision. *Snodgrass*, 903 P.2d at 1017; *UNC Teton*, 774 P.2d at 594; *DeWitt v. Balben*, 718 P.2d 854, 863 (Wyo. 1986). The quoted language of the restrictive covenants does provide contractual au-

---

**3.** In the Brief of Appellees, the Andersons assert that the language of this paragraph of the covenants was changed after the entry of Judgment. The record does not clearly demonstrate that the amendments in fact were ratified. The neighbors in the Reply Brief of Appellants do not dispute the claim of amendments by the Andersons. We assume that the draft amendments that were injected into the record have been appropriately ratified by the requisite number of property owners in Sherri View Subdivision.

thority to award attorney's fees to the neighbors.

■ While appropriate contractual authorization to award attorney's fees is present, we also must determine whether a proper basis exists in the record for an award of attorney's fees. The requisite demonstration cannot be a mystery to any of our legal practitioners.

Wyoming has adopted the federal "lodestar" test for the determination of the reasonableness of attorney fees. *UNC Teton Exploration Drilling, Inc. v. Peyton,* 774 P.2d 584 (Wyo.1989). *See Stanbury v. Larsen,* 803 P.2d 349 (Wyo.1990). The lodestar test requires that two factors be considered: (1) whether the fee charged represents the product of reasonable hours times a reasonable rate; and (2) whether other factors of discretionary application should be considered to adjust the fee either upward or downward. *UNC Teton,* 774 P.2d at 595. The party who is seeking an award of fees has the burden of providing proof of the reasonableness of his fee. *See Miles v. CEC Homes, Inc.,* 753 P.2d 1021 (Wyo.1988); *Jones Land & Livestock v. Federal Land Bank,* 733 P.2d 258 (Wyo. 1987). In order to meet that burden of proof, the claimant must present not only an itemized billing reflecting the time and the rate, but there must be evidence demonstrating that the fee was reasonable. *UNC Teton.* In this case, there was no testimony or other evidence presented with respect to the reasonableness of the attorney fees that were charged. We must reverse the award of attorney fees as an abuse of discretion by the trial court in light of the applicable rule of law.

*Hinckley v. Hinckley,* 812 P.2d 907, 915 (Wyo.1991). *Pekas v. Thompson,* 903 P.2d 532, 536 (Wyo.1995). *See also, Kidd v. Kidd,* 832 P.2d 566, 572 (Wyo.1992); *Greenough v. Prairie Dog Ranch, Inc.,* 531 P.2d 499, 503 (Wyo.1975).

■ In *UNC Teton Exploration Drilling,* we specifically adopted the federal lodestar test for determining the reasonableness of attorney's fees. *UNC Teton Exploration Drilling,* 774 P.2d at 594. The party seeking the award of attorney's fees must demonstrate: (1) the fee charged represents the product of reasonable hours times reasonable rates; (2) whether other factors of discretionary application should be considered to adjust the fee either upward or downward. *Pekas,* 903 P.2d at 536. The rationale for this rule is that attorney's fees are a variety of punitive damages and must be proven to have been incurred and to be reasonable in amount in order to be awarded. *UNC Teton Exploration Drilling,* 774 P.2d at 594.

■ The record in this case includes an affidavit reflecting costs and attorney's fees. There is nothing in the record to demonstrate the reasonableness of the fees in accordance with our cases. The neighbors simply failed to establish the reasonableness of the itemized billing as they were required to do. Consequently there was no abuse of discretion on the part of the trial court in refusing to award attorney's fees.

■ Our practice has been to remand a case to permit additional proof of attorney's fees only in those instances in which the party was denied an opportunity to establish the fees in the court below. *Pekas,* 903 P.2d at 537. The neighbors had an adequate opportunity to establish the reasonableness of their attorney's fees, and we do not in those circumstances remand to permit them to have another opportunity. *Pekas,* 903 P.2d at 537, *quoting, Downing v. Stiles,* 635 P.2d 808, 817 (Wyo.1981). It would not be fair to the Andersons to afford the neighbors another opportunity to prove the reasonableness of their attorney's fees in this case. *UNC Teton Exploration Drilling,* 774 P.2d at 596 n. 8.

■ In their last assertion of error, the neighbors contend that the trial court committed an abuse of discretion in not awarding them a twenty-five (25) dollars per day penalty based upon the violations of the restrictive covenants by the Andersons. Article VI (emphasis added) of the restrictive covenants provides in this regard:

(A) *Enforcement.* Declarant and its successors and assigns shall have the sole and exclusive right and authority to enforce compliance with the covenants contained

herein. Upon the violation of any covenant, or upon the failure to pay any assessments, a written notice of such violation or failure shall be directed to the violator who shall then have forty-five (45) days after receipt of the said notice to correct the violation or pay the assessment due. If said violation is not so corrected or payment is not made, Declarant or its successors or assigns, may re-enter and take possession of the violator's premises and correct the violation and charge all costs of such correction to the Owner. **In addition, damages may be assessed against the violator at the rate of twenty-five dollars ($25.00) per day for each day the violation continues after the forty-five (45) day notice.**

The neighbors argue that, because the trial court found the Andersons were in violation of the restrictive covenants, it should have assessed the twenty-five (25) dollars per day penalty from the time Margo Nelsen, acting for the Architectural Control Committee, notified Faith Anderson of the covenant violations. It is clear from the language of the enforcement provision that this provision is cumulative to other remedies, and the use of "may" makes such damages available only at the discretion of the trial court. For this reason, the trial court did not abuse its discretion in refusing to award the twenty-five (25) dollars per day penalty to the neighbors.

Furthermore, "Declarant" is defined in Article I as follows:

(A) *Declarant.* Declarant means Sherri View Subdivision, acting through its architectural control committee.

Because they are contractual in nature, restrictive covenants are to be interpreted in accordance with the principles of contract law. *Anderson v. Bommer*, 926 P.2d 959, (Wyo.1996). We construe plain terms of a covenant, if they are sufficiently clear, without reference to any attendant facts and circumstances or extrinsic evidence. *American Holidays, Inc. v. Foxtail Owners* Ass'n, 821 P.2d 577, 579 (Wyo.1991); *Klutznick v. Thulin*, 814 P.2d 1267, 1270 (Wyo.1991); *Knadler v. Adams*, 661 P.2d 1052, 1053 (Wyo. 1983). In this instance, the plain meaning of the restrictive covenant is that the "Declar-

ant and its successors and assigns shall have the sole exclusive right and authority to enforce compliance with the covenants." The Declarant is the Sherri View Subdivision acting through the Architectural Control Committee. There is no evidence in the record of an assignment of the right to recover damages from the Declarant to the individual property owners. It follows that the provision for a continuing penalty was retained for the benefit of the collective land owners acting through the Architectural Control Committee. It was not intended be available to benefit individual owners who sought enforcement of the covenant.

We hold that the claim of error with respect to the construction of the restrictive covenants by substituting "lot" for "residence" is moot. There was no abuse of discretion on the part of the trial court with respect to the other claims of error. The Judgment is affirmed.