Richard J. McGUIRE, Jr. and Kristine E. McGuire, Appellants (Plaintiffs),

v.

M. Bernard LOWERY, Jr., individually; Ethel M. Rabel, individually; Pronghorn Construction Ltd, Keogh Account dated January 1, 1982, through its Trustees M. Bernard Lowery, Jr. and Ethel M. Rabel; Jean C. Cotton Living Trust Agreement dated March 30, 1995, through its Trustee Jean C. Cotton, Appellees (Defendants),

and

John P. Adams, Mary Adams, Margaret J. Kline, E. Robert Adams and Jane Adams, Appellees (Intervenors).

No. 99–9.

Supreme Court of Wyoming.

April 4, 2000.

Representing Appellants: Steven F. Freudenthal of Herschler, Freudenthal, Salzburg, Bonds & Zerga, P.C., Cheyenne, Wyoming.

Representing Appellees Lowery, Rabel, and Pronghorn Construction Ltd., Keogh Account: Becky N. Klemt and Greg A. Von Krosigk of Pence and MacMillan, Laramie, Wyoming.

Representing Appellee Jean K. Cotton Living Trust Agreement: John M. Walker of Hickey, Mackey, Evans & Walker, Chey-

enne, Wyoming; and B.D. Trierweiler, Cheyenne, Wyoming.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and HILL, JJ.

THOMAS, Justice.

The primary question in this appeal is whether a first right of refusal in real property is triggered when the grantors of the right place title to the burdened property in the name of their wholly owned and controlled business assign, rather than their individual names, under which they granted the right of refusal. Because the property remained under the control of the same persons, we hold the first right of refusal was unaffected, and we affirm the district court's grant of summary judgment on the issue. In a second issue, appellants Richard J. McGuire Jr. and Kristine E. McGuire (the McGuires) ask us to decide whether a contractual provision for "a recordable easement" requires appellees M. Bernard Lowery Jr. (Lowery), Ethel M. Rabel (Rabel), and Pronghorn Construction Ltd., Keogh Account (Pronghorn Construction) to provide multiple easements when rugged, mountainous terrain prevents any one easement from providing access to an entire parcel of land. Looking to the unambiguous contract language, we hold that only one access easement is required, and affirm the district court's grant of summary judgment on that issue as well. Finally, the McGuires challenge the district court's refusal to award their attorney's fees and costs. We hold there was no abuse of the district court's discretion in its ruling on attorney's fees and costs, and we affirm the decision.

This statement of the issues is found in the Brief of Appellants:

A. As a matter of law, is property subject to a right of first refusal freed of the right of first refusal whenever it is transferred with other property[?]

B. As a matter of law, does an access easement providing access to less than twenty percent of Section 7 (approximately 640 acres) comply with a contractual duty to "provide a recordable access easement to Section 7[?]"

C. Under the facts of this case, did the District Court abuse its discretion in failing to provide for an award of attorney's fees to the McGuires as the prevailing, non-defaulting party under the McGuire Contract[?]

This Statement of the Issues is found in the Brief of Appellees M. Bernard Lowery, Jr., Ethel M. Rabel, and Pronghorn Construction Ltd., Keogh Account:

1. The district court did not err in holding that there were no issues of material fact in dispute and that, as a matter of law, Appellee Pronghorn Construction Ltd. Keogh Account's exercise of an option did not violate the clear language of Appellants' right of first refusal.

2. The district court did not err in determining, as a matter of law, that Appellees Rabel and Lowery were only contractually obligated to provide Appellants with a single recordable access easement to Section 7, and in determining, as a matter of fact, that the easement ultimately granted was reasonable.

3. The district court did not abuse its discretion in refusing to award attorney's fees to any party.

This Statement of the Issues is found in the Brief of Appellee, Jean K. Cotton Living Trust Agreement Concerning Easement Issue:

I. Did the trial court [err] when it concluded that appellants' rights of first refusal were not breached? (This issue will be addressed and briefed through separate brief by B.D. Trierweiler. The title insurance company for the Cotton Trust has agreed to defend this issue, but has refused to defend the issue set forth below. Accordingly, Cotton Trust has hired this firm to defend such issue,)

II. Did the trial court act in a clearly erroneous manner when it personally inspected and fixed the location of the appellants' easement?

This Statement of the Issues is found in the Brief of Appellee, filed on behalf of the Cotton Living Trust Agreement:

A. Did the purchase of property, which was subject to a first right of refusal along with other property, by Pronghorn Construction Ltd. Keogh Account from

Williams Land & Livestock Co. trigger Appellants['] first right of refusal?

B. Did the District Court abuse its discretion by failing to award attorney's fees and costs to Appellants?

In September of 1994, Lowery and Rabel entered into an option agreement that permitted them or their assigns to purchase several parcels of land. Lowery and Rabel controlled several business entities, among which were Pronghorn Development Ltd., Berthel Investors, and Pronghorn Construction. In March of 1995, Lowery and Rabel accepted an offer from the McGuires to purchase Section 7, which was one of the parcels of land that Lowery and Rabel had an option to acquire, although they had not at that time exercised their option. In Attachment "A" to the contract entitled Offer, Acceptance and Receipt Specific Performance Contract (McGuire Contract) Lowery and Rabel agreed that the McGuires would have a "first right of refusal" on another parcel of the land that Lowery and Rabel held an option to purchase (the ROR parcel). The McGuire Contract provided that the first right of refusal would be triggered if Lowery and Rabel received an acceptable offer on the ROR parcel during 1995. An additional provision in Attachment "A" obligated the "[s]eller to provide a recordable access easement to Section 7, T14N, R72W of 6th P.M. within one year from closing."

The sale to the McGuires was closed on April 28, 1995. In a separate document executed at that time, Lowery and Rabel committed to provide an easement:

The undersigned hereby agrees to furnish a recordable access easement to Section 7, Township 14 North, Range 72 West of the 6th P.M., Albany County, Wyoming, within one year from the date of this document.

On the same day that the McGuire sale closed, Lowery and Rabel, in their capacities as trustees of Pronghorn Construction, exercised their option to purchase certain parcels of the optioned land including the ROR parcel. The McGuires never were informed of the transfer of the ROR parcel to Pronghorn Construction.

In the month of August of 1995, Pronghorn Construction received an offer from the Jean K. Cotton Living Trust (Cotton Trust) to purchase some of Pronghorn Construction's land, including the ROR parcel. Pronghorn Construction sent a copy of the Cotton Trust offer to the McGuires, with the name of the offeror redacted. The McGuires made no effort to exercise their first right of refusal, and the Cotton Trust later withdrew the offer, leaving Pronghorn Construction as the owner of the ROR parcel. In January of 1996, after the McGuires' first right of refusal had expired according to its terms, the Cotton Trust made another offer to purchase the ROR parcel which Pronghorn Construction accepted. In the warranty deed from Pronghorn Construction to the Cotton Trust a: "20 foot access easement for ingress and egress to Section 7 * * * for Dick McGuire * * *," was reserved.

On July 3, 1996, the McGuires filed this action in which they alleged that Lowery and Rabel had breached their contract with the McGuires by denying their first right of refusal and by failing to provide a recordable easement appurtenant to Section 7. The McGuires' Complaint also included, as a prayer for relief, a demand for attorney's fees and costs. Lowery, Rabel, and Pronghorn Construction answered the McGuires' Complaint, and denied violating the first right of refusal. They affirmatively alleged that they already had granted the McGuires a recordable access easement to Section 7.

Lowery, Rabel and Pronghorn Construction filed a Motion for Summary Judgment, which the district granted in part and denied in part. In its partial grant of summary judgment the court disposed of two of the claims presented by the McGuires. The district ruled that no event occurred in 1995 which had the effect of triggering the McGuires' first right of refusal, and that first right of refusal expired by its express terms when the year ended. The district court also construed the contract as obligating Lowery, Rabel and Pronghorn Construction to provide only one access easement to Section 7 for the McGuires, and that easement had been furnished. On two issues summary judgment was denied, the district court concluding that genuine issues of material fact existed with respect to those issues. They

were: (1) whether the McGuire Contract required an easement in gross or an easement appurtenant; and (2) whether the parties intended that the easement would provide access to a public road.

The district court then held a bench trial on August 7, 1997. Lowery and Rabel conceded that the easement granted did not reach a public road and that the McGuires were entitled to specific performance in that regard. The testimony and evidence then addressed the remaining issue of whether the easement was intended to be an easement in gross or an easement appurtenant. After the trial, the district court entered an order in which it ruled that the McGuires were entitled to an easement appurtenant. In the same order, the district court required Lowery, Rabel and Pronghorn Construction to provide an access easement to Section 7 from a public road on or before October 25, 1997.

The parties were not able to agree on an appropriate location for the easement, and they again presented their dispute to the district court on April 27, 1998. Together with the parties and counsel, the district judge personally viewed the area, and then presented Lowery, Rabel and Pronghorn Construction with two alternative routes, ordering the defendants to choose which one they would grant to the McGuires. At that time, the district court ordered that each of the parties would be responsible for their own attorney's fees. Pursuant to the district court's order, Lowery, Rabel and Pronghorn Construction elected one of the options, and on October 20, 1998, the district court issued its Final Order confirming the specific performance on the part of the defendants. The McGuires then pursued an appeal to this Court.

The McGuires' first two issues challenge decisions made by the district court in its Order on Defendants' Motion for Summary Judgment. We recently have explained our method for review of summary judgments in this way:

> " 'When a motion for summary judgment is before the supreme court, we have exactly the same duty as the district judge; and, if there is a complete record before us, we have exactly the same material as did he.

We must follow the same standards. The propriety of granting a motion for summary judgment depends upon the correctness of a court's dual findings that there is no genuine issue as to any material fact and that the prevailing party is entitled to judgment as a matter of law. This court looks at the record from the viewpoint most favorable to the party opposing the motion, giving to him all favorable inferences to be drawn from the facts contained in affidavits, depositions and other proper material appearing in the record.' " *Reno Livestock Corporation v. Sun Oil Company (Delaware)*, Wyo., 638 P.2d 147, 150 (1981). *See also, Blackmore v. Davis Oil Company*, Wyo., 671 P.2d 334, 336 (1983).

> "A summary judgment should only be granted where it is clear that there are no issues of material facts involved and that an inquiry into the facts is unnecessary to clarify the application of law. *Johnson v. Soulis*, Wyo., 542 P.2d 867 (1975). A material fact is one which has legal significance. *Johnson v. Soulis*, supra. It is a fact which would establish a defense. *Wood v. Trenchard*, Wyo. 550 P.2d 490 (1976). After the movant establishes a prima facie case the burden of proof shifts to the opposing party who must show a genuine issue of material fact, *Gennings v. First Nat'l Bank of Thermopolis*, Wyo., 654 P.2d 154 (1982), or come forward with competent evidence of specific facts countering the facts presented by the movant. *Matter of the Estate of Brosius*, Wyo., 683 P.2d 663 (1984). The burden is then on the nonmoving party to show specific facts as opposed to general allegations. 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil § 2727, p. 538. The material presented must be admissible evidence at trial. Conclusory statements are not admissible. *Bancroft v. Jagusch*, Wyo., 611 P.2d 819 (1980). We give the party defending the motion the benefit of any reasonable doubt." *Roth v. First Security Bank of Rock Springs, Wyoming*, Wyo., 684 P.2d 93, 95 (1984).

*Nowotny v. L & B Contract Industries*, 933 P.2d 452, 455 (Wyo.1997) (quoting

*Thomas by Thomas v. South Cheyenne Water and Sewer Dist.,* 702 P.2d 1303, 1304 (Wyo.1985)).

*Mercado v. Trujillo,* 980 P.2d 824, 825–26 (Wyo.1999).

On the issue relating to the first right of refusal, the district court clearly reached the correct result. The district court disposed of the issue on summary judgment, saying:

With respect to Plaintiff's right of first refusal, there is no genuine issue of material fact that it terminated by the mere passage of time. It was limited to the year 1995, and no event occurred in 1995 to trigger the right of first refusal since both the Cotton Trust offer and the acquisition of lands by Defendant Pronghorn Keogh included more land than was subject to Plaintiffs' right of first refusal. Defendants are, therefore, entitled to judgment as a matter of law on all claims surrounding Plaintiffs' right of first refusal.

We expand upon the rationale articulated by the district court.

The fact that the ROR parcel was included in the acquisition by Pronghorn Construction would have been germane, and it would have constituted a triggering event, had that transaction been a "sale" of the land as the McGuires insist. It was not, however, a sale by Lowery and Rabel to Pronghorn Construction. The argument of Lowery, Rabel and Pronghorn Construction is that the McGuires had no different situation, following that transaction, whether the land was titled in the names of Lowery and Rabel or was titled to Pronghorn Construction. They cite to *Kroehnke v. Zimmerman,* 171 Colo. 365, 467 P.2d 265 (1970). In that case, the Supreme Court of Colorado ruled that a conveyance of real property by its owners to a corporation owned entirely by the owners of the property did not constitute a sale for the purpose of activating a first right of refusal. *Id.* at 267. The Colorado court reasoned that a transfer made solely for the convenience of the owners in managing their property is not a sale. *Id.*

As an answer to *Kroehnke,* the McGuires cite *Prince v. Elm Inv. Co., Inc.,* 649 P.2d 820 (Utah 1982). In *Prince,* the Supreme Court of Utah held that a transfer of property from a sole owner to a partnership in which the owner was one of the partners was a sale for purposes of asserting a right of first refusal. *Prince,* 649 P.2d at 823. In that opinion, however, the Supreme Court of Utah distinguished the facts before it from *Kroehnke. Prince,* 649 P.2d at 823. The Utah court pointed out that although the partnership in *Prince* included the former owner, management decisions of the partnership had to be made unanimously. *Prince,* 649 P.2d at 821. Therefore, a significant change in control of the property occurred when the transfer was made to the partnership. In *Kroehnke,* however, as in the case at hand, the property remained under the control of the same persons, albeit in a corporate ownership rather than individual ownership.

This case is one of first impression with respect to the issue in Wyoming, and we rely upon persuasive authority from other jurisdictions that confirm the *Kroehnke* result. *Straley v. Osborne,* 262 Md. 514, 278 A.2d 64, 71 (1971); *Sand v. London & Co.,* 39 N.J.Super. 513, 121 A.2d 559, 562 (1956); *Midland Container Corp. v. Sophia Realty Corp.,* 65 A.D.2d 784, 410 N.Y.S.2d 638, 640 (1978); *Belliveau v. O'Coin,* 557 A.2d 75, 78 (R.I.1989). We hold that for a transaction to constitute a "sale" and trigger a first right of refusal, it must involve an arms-length transaction resulting in an actual change in control of the burdened property rather than simply moving it from the individual owners to an entity controlled by them. That concept does not fit the transaction in which Pronghorn Construction acquired this land because there was no change in control over the right to dispose of the land. Consequently, no event occurred during 1995 that would permit the McGuires to invoke their first right of refusal. The grant of summary judgment by the district court on that issue is affirmed.

The second issue presented by the McGuires in this appeal asserts error on the part of the district court when it ruled that the McGuire Contract required Lowery and Rabel to provide only a single recordable access easement, and they assert further er-

ror in the ruling by the district court that the easement granted was sufficient. The McGuires tell this Court that, "[t]he undisputed testimony is that the final easement confirmed by the district court provides access to less than twenty percent of Section 7." The McGuires, however, do not cite any point in the record where such testimony can be located, and we have not found it. Even so, it is clear that the district court considered that claim by the McGuires because it said in its decision letter of February 10, 1997:

> Plaintiffs claim that the access easement provided only allows access to a portion of Section 7. They maintain that the granted easement does not provide them with access to the eastern half of Section 7, apparently because of the difficult terrain in the area. They say they require an additional easement to reach the isolated portion. Defendants point out that the contract calls for "a recordable access easement." The Court finds that the plain language of the contract clearly requires a singular easement and that Defendants are required to provide only one recordable easement to Section 7. Defendants have done so, and Defendants have met their burden with respect to this portion of the contract. Defendants are entitled to summary judgment on this issue.

■ In arriving at its decision, the district court invoked and relied upon the rules of this Court relating to contract interpretation. The basic premise is that a court "must derive the meaning of the instrument from its language if the terms are clear and unambiguous." *Mountain Cement Co. v. Johnson,* 884 P.2d 30, 32 (Wyo.1994). The district court pointed out in its decision letter that the contract called for "a recordable easement." Both the indefinite article and the noun in that phrase assume the singular context. We agree that the unambiguous language of the contract requires only one easement. The McGuires may not have received what they wanted or what they envisioned, but they did receive what they agreed to accept. To the extent that the McGuires remain dissatisfied with the access provided, we can only echo what the district court told them in its final decision letter:

> The Court can only suggest that the parties would have been well advised had they specified the access route to be conveyed when the sale of property was completed.

We affirm the grant of the summary judgment by the district court on the access easement issue.

■ Finally, we turn to the McGuires' assertion that the district court abused its discretion by refusing to award them attorney's fees. In *Vaughn v. State,* 962 P.2d 149, 151 (Wyo.1998), we ratified our adoption, in *Martin v. State,* 720 P.2d 894, 897 (Wyo.1986), of the following standard:

> "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. *Byerly v. Madsen,* 41 Wash.App. 495, 704 P.2d 1236 (1985)."

With that definition clearly in mind, we must inquire whether the district court used sound judgment and refrained from acting arbitrarily or capriciously when it refused the McGuires' request for attorney's fees.

The McGuires rely upon the following language from Article XIII, Paragraph B of the contract:

> In the event that any party shall become in default or breach of any of the terms of this Contract, such defaulting or breaching party shall pay all reasonable attorney's fees and other expenses which the non-breaching or nondefaulting party may incur in enforcing this Contract with or without suit.

The McGuires contend that, as the prevailing party, they are contractually entitled to receive their attorney's fees and other expenses from Lowery and Rabel.

■ In Wyoming, the American rule, that each party is responsible for his own attorney's fees in the absence of an express contractual or statutory provision to the contrary, is in vogue. *McLain v. Anderson,* 933 P.2d 468, 472 (Wyo.1997). Even a contract provision for attorney's fees does not place

the issue beyond the exercise of the district court's discretion. *Id.* at 473. As we said in an earlier case:

> While the general rule is that a valid provision for attorney's fees * * * is as much an obligation of the contract as any part of it, the trial court still has discretion in exercising its equitable control to allow only such sum as it thinks reasonable. A trial court in its discretion may properly disallow attorney's fees altogether on the basis that such recovery would be inequitable. *Graves v. Burch*, 26 Wyo. 192, 181 P. 354, 5 A.L.R. 1216.

*Combs v. Walters*, 518 P.2d 1254, 1255 (Wyo. 1974).

■ In this case, the district court did not articulate a rationale for denying the parties' motions for attorney's fees. The district court simply said:

> With respect to all parties' motion for attorneys' fees and costs, the Court finds as follows. Having carefully considered the motions of the parties for awards of attorneys' fees and costs, the Court finds that all parties shall bear their own attorney's fees and costs herein.

Absent a clearly articulated reason for the decision of the district court on a discretionary matter, we sustain that decision if the record presents support under any proper theory. *TL ex rel. TL v. CS*, 975 P.2d 1065, 1069 (Wyo.1999); *State v. Dieringer*, 708 P.2d 1, 8 (Wyo.1985).

In this instance, it was reasonable for the district court to require each party to bear its own attorney's fees and costs because, contrary to the McGuires' contentions, there was no prevailing party on all issues. It is clear that Lowery and Rabel breached the contract because the easement they initially granted was in gross rather than appurtenant and connected to a private rather than a public road. However, the McGuires claimed, but they failed to establish, multiple other breaches that Lowery and Rabel had to defend at considerable cost. The district court exercised sound judgment in this regard, and it was reasonable for the district court to conclude that it would be unjust to require Lowery and Rabel to pay the attorney's fees and costs for both parties when

they had prevailed on both of the issues decided on summary judgment and a number of those decided on the merits. There is no indication that this decision was arbitrary or capricious in any respect. We hold that the district court did not abuse its discretion in refusing the demand by the McGuires for attorney's fees.

The judgments and orders of the district court are affirmed in all respects.