2008 WY 74

**Ann T. DWAN, Appellant (Plaintiff),**

**v.**

**INDIAN SPRINGS RANCH HOME-OWNERS ASSOCIATION, INC., a Wyoming nonprofit corporation, Appellee (Defendant).**

**No. S–07–0154.**

Supreme Court of Wyoming.

June 30, 2008.

Representing Appellant: David G. Lewis, Jackson, Wyoming.

Representing Appellee: Frank Hess of Hess Carlman & D'Amours, LLC, Jackson, Wyoming; Heather Noble, Jackson, Wyoming. Argument by Mr. Hess.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, BURKE, JJ.

GOLDEN, Justice.

[¶ 1] Ann Dwan appeals from the grant of summary judgment to the Indian Springs Ranch Homeowners Association (HoA). Dwan sued the HoA after its Board denied Dwan's application to build an addition onto her residence. Dwan claims the Board unreasonably denied her application. The HoA responded, in part, that Dwan's next course of action should have been to follow internal HoA procedures to seek a variance of the covenant invoked to deny her application rather than bring a legal action against it. Both parties moved for summary judgment. The district court denied summary judgment to Dwan and granted summary judgment to the HoA on the ground that Dwan had not complied with the variance requirements of the covenants. We disagree that Dwan was required to pursue a variance before filing the instant action, and therefore reverse the district court. Further, finding no question of material fact exists, we remand with instructions to the district court to enter summary judgment in favor of Dwan.

## ISSUES

[¶ 2] Dwan presents the issue as whether the Board acted unreasonably in rejecting her application to build a proposed addition to her residence. Under this rubric she also argues the HoA cannot make her seek a variance.

## FACTS

[¶ 3] All land owners in the Indian Springs Ranch subdivision, including Dwan, are subject to recorded Covenants, Conditions and Restrictions (CCRs). Among other things, the CCRs require landowners to seek permission of the Design, Environment and Wildlife (DEW) Committee before engaging in any construction in the subdivision. The DEW Committee reviews submitted building plans and then recommends to the Board that a plan "be approved, approved subject to conditions, or disapproved."

[¶ 4] In 1998, Dwan began the process of constructing a residence on her lot. Her residence was designed with a roof pitch of a ten-inch vertical rise for every twelve inches of horizontal distance. This pitch is steeper than the pitch allowed for by the CCRs, which is eight inches per twelve inches. Despite this nonconformity, her building plan was approved, and the construction of her residence was completed in 1999. In 2003, Dwan sought, and received, approval to build a detached structure that would serve as both a guesthouse and a garage. This detached building was approved and constructed with the same roof pitch as her residence.

[¶ 5] This dispute began in 2006, when Dwan presented building plans to the DEW Committee for a proposed addition to her residence. The plans showed the same roof pitch as her residence and guesthouse/garage. This time, the DEW Committee and the Board denied her application, citing the non-conforming roof pitch as the reason for the denial. The CCRs provide a method for presenting an application directly to the HoA Members to receive a variance. Instead of seeking a variance from the Members, Dwan brought the instant action.

## DISCUSSION

### Standard of Review

[¶ 6] We review a summary judgment using the same standards which applied to the proceedings below, and using the same materials. The propriety of granting a motion for summary judgment depends upon the correctness of the dual findings that there is no genuine issue as to any material fact and that the prevailing party is entitled to judgment as a matter of law. W.R.C.P. 56(c). A genuine issue of material fact exists when a disputed fact, if proven, would have the effect of establishing or refuting an essential element of an asserted cause of action or defense. We examine the record from a vantage point most favorable to the party who opposed the motion, affording to that party the benefit of all favorable inferences that fairly may be drawn from the record. *Mathisen v. Thunder Basin Coal Co., LLC,* 2007 WY 161, ¶ 9, 169 P.3d 61, 64 (Wyo.2007); *Jacobson v. Cobbs,* 2007 WY 99, ¶ 7, 160 P.3d 654, 657 (Wyo.2007); *Martin v. Committee for Honesty and Justice at Star Valley Ranch,* 2004 WY 128, ¶ 8, 101 P.3d 123, 127 (Wyo.2004).

### Variance

[¶ 7] The HoA argues the district court was correct in determining Dwan was required to seek a variance prior to bringing legal action against it. We disagree. Pursuant to the pertinent Covenant: "A variance shall be allowed from the conditions and restrictions of any of these Covenants upon the written approval of the Members of the Association owning two-thirds of the Sites after recommendation of approval by the Board." As the Chairman of the DEW Committee explained in correspondence to Dwan, without the recommendation of the Board, "an Applicant may not seek a 2/3 vote and will be bound by the decision of the Board." In that same correspondence, Dwan was informed "the DEW Committee and the ISR Board disapprove of your application for a remodel."

[¶ 8] Although the CCRs allow for plans to be approved subject to conditions, the DEW Committee and the Board did not take that approach. They denied her application outright. In fact, there is no indication anywhere in the correspondence that the Board would recommend approval of her application to the Members, thus allowing her plans to go to a vote for a variance. In toto, in this correspondence the DEW Committee and the Board not only rejected Dwan's application but also indicated there was no possibility of successfully pursuing a variance as

**1202**

described in the CCRs. Consequently, under the circumstances, Dwan was not required to take any further action as a precondition to initiating and maintaining this legal action.[1]

### Reasonableness of the Denial of Dwan's Application

[¶ 9] Both sides look to the CCRs to support their respective positions on the appropriateness of the DEW Committee and the Board's denial of Dwan's application. While this Court construes CCRs as it would any contract, there are a few significant embellishments:

> We treat restrictive covenants as contractual in nature and interpret them in accordance with the principles of contract law. *McLain v. Anderson*, 933 P.2d 468, 474 (Wyo.1997); *Anderson [v. Bommer]*, 926 P.2d [959] at 961 [(Wyo.1996)]; *McHuron v. Grand Teton Lodge Co.*, 899 P.2d 38, 40 (Wyo.1995). Most importantly, "[w]e seek to determine and effectuate the intention of the parties, especially the grantor(s), as it may appear or be implied from the instrument itself." *Anderson*, 926 P.2d at 961. We ascertain the true intention of the parties by looking at the writings as a whole, construing them to effectuate the intent of the parties. *Sierra Trading Post, Inc. v. Hinson*, 996 P.2d 1144, 1148 (Wyo.2000) (citing *Kindler v. Anderson*, 433 P.2d 268, 270–271 (Wyo.1967)); *McHuron*, 899 P.2d at 41.
>
> Whether language is ambiguous is a question subject to de novo review by this Court. *Samuel [v. Zwerin]*, 868 P.2d [265] at 266 [(Wyo.1994)]. "Language is ambiguous if it contains a double meaning." Id. (citing *McNeiley v. Ayres Jewelry Co.*, 855 P.2d 1242, 1244 (Wyo.1993) (citing *Cliff & Co., Ltd. v. Anderson*, 777 P.2d 595, 599 (Wyo.1989))). Restrictive covenant language that is clear and unambiguous is construed according to its plain and ordinary meaning without reference to attendant facts, circumstances or extrinsic evidence. *McLain*, 933 P.2d at 474 (citing *American Holidays, Inc. v. Foxtail Own-

ers Ass'n*, 821 P.2d 577, 579 (Wyo.1991); *Klutznick v. Thulin*, 814 P.2d 1267, 1270 (Wyo.1991); *Knadler v. Adams*, 661 P.2d 1052, 1053 (Wyo.1983)). Restrictions upon the use of land are not favored, will not be extended by implication and, when in doubt, will be construed in favor of the free use of the land. *Kindler*, 433 P.2d at 271.

*Hutchison v. Hill*, 3 P.3d 242, 245 (Wyo. 2000).

[¶ 10] First, the Board argues it disapproved Dwan's application because it is without discretion to grant variances from unambiguously articulated restrictions in the CCRs. Specifically, in this case, the DEW Committee and the Board argue they are without discretion to grant a variance regarding the roof pitch because the CCRs state the acceptable roof pitch with mathematical certainty; the decision is therefore not amenable to a review for reasonableness. Reading the CCRs as a whole, however, we find no provision preventing the DEW Committee and/or the Board from granting variances. The variance provision discussed above simply states a variance "shall be allowed" upon appropriate approval of the Members. It does not preclude the DEW Committee or the Board from granting variances at their own discretion.

[¶ 11] Many provisions in the CCRs indicate that the Board has the authority to grant variances. For instance, the CCR regulating height and floor area provides:

> Prior variances or deviations from the design and construction requirements shall not estop or prevent the Board or the DEW Committee from rejecting any subsequent application based on lack of conformity or failure to comply with the design requirements hereof. Any waiver of any design requirements by the Board or the DEW Committee will constitute a waiver for that requirement only, and will not constitute a waiver for any other requirement, whether by a different Owner

---

1. To avoid confusion, we emphasize we are not deciding whether seeking a variance from the Members is a required precondition under the CCRs to bringing legal action against the HoA.

Under the instant circumstances, such analysis is unnecessary. Even if seeking such a variance is a general precondition, it would be an exercise in futility for Dwan to further pursue the issue.

or by the same Owner for a different requirement.

This is a clear indication that variances can be granted by the Board and the DEW Committee. Also, submitted building plans are deemed approved if the DEW Committee and the Board do not act within a certain time frame. The only exceptions are for plans for structures that exceed the boundary lines of the allowable construction area of the site, plans that exceed the height limitation, and plans that exceed the floor area limitations, which are deemed denied. Such automatic approval is inconsistent with an insistence that no variances be granted except with approval of two-thirds of the HoA Members.

[¶ 12] It is particularly disingenuous for the DEW Committee and the Board to suggest that they do not have the authority to grant a variance for this application considering they granted Dwan two variances for her guesthouse/garage in June 2003:

> This letter is to confirm that your request to obtain a variance from the DEW COMMITTEE of Indian Springs Ranch Subdivision in order to build a guest house/garage above the standard 19 feet height limitation is hereby approved to 26 feet as presented in your plans. The DEW COMMITTEE is also approving your variance to allow this same structure to exceed the maximum floor area of 1200 square feet as per the C C & R's to your proposed 2000 square feet of floor area.

Although the CCRs were amended in their entirety in 2005, no substantive change was made to the language of the variance provision.

 [¶ 13] The bottom line is that the DEW Committee and the Board were under no contractual compulsion to reject Dwan's application. The CCRs state that approval of applications by the Board "shall not be unreasonably withheld." The only reason given by the DEW Committee and the Board was that the roof pitch did not comply with the CCRs. There was no further objection to Dwan's proposed addition. Yet Dwan had already received permission for, and built, her residence and a detached guesthouse/garage with the identical roof pitch proposed for her addition. One of the purposes of the CCRs is to provide for "consistent, compatible and attractive development" of sites. If Dwan were forced to follow the roof pitch required by the CCRs, the roof on her addition would not be as steep as the roof on the rest of her residence. That would not constitute "consistent, compatible and attractive development." As Dwan's architect stated in a letter to the DEW Committee, in his opinion, "the design of the existing house would be irreparably damaged by changing the roof pitch and would reflect badly on the quality of the subdivision." We think it quite unreasonable to require Dwan to alter her roof pitch in order to add an otherwise acceptable addition onto her residence.

## CONCLUSION

[¶ 14] We agree there are no genuine issues of material fact, and summary judgment is appropriate in this case. The only question is the correct application of the facts to the language of the CCRs. Dwan was not required to seek a variance from the Members in this case. Pursuant to the CCRs, Dwan could only move forward upon recommendation of approval by the Board. The correspondence from the DEW Committee and the Board to Dwan clearly indicated that the Board was not disposed to give such recommendation.

[¶ 15] The only objection raised by the DEW Committee and the Board to Dwan's application for an addition to her residence was that the roof pitch did not conform to the requirements set out in the CCRs. Yet the proposed roof pitch was identical to the roof pitch of the rest of the residence, as well as the detached guesthouse/garage. It defies reason to require a homeowner to build an addition onto her residence with a shallower roof pitch than the rest of the residence. Her application should be approved.

[¶ 16] We remand the case for the entry of summary judgment to Dwan on the issue of approval of her application. Further proceedings consistent with this opinion should be conducted as appropriate.