

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-24-2005

# Creque v. Texaco Antilles Ltd

Precedential or Non-Precedential: Precedential

Docket No. 03-3463

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Creque v. Texaco Antilles Ltd" (2005). *2005 Decisions.* Paper 1083.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1083

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 03-3463

———

MARGARET CREQUE

Appellant

v.

TEXACO ANTILLES LTD., a/k/a/ TEXACO ANTILLES
LIMITED, AND TEXACO CARIBBEAN

———

On Appeal from the District Court of the Virgin Islands
(D.C. No. 01-cv-00122)
Chief District Judge: Honorable Raymond L. Finch
District Judge: Thomas K. Moore

———

Submitted April 20, 2005
Before: NYGAARD, RENDELL, and SMITH, Circuit Judges.

(Filed:   May 24, 2005)

Michael C. Dunston, Esq.
12 D Bjerge Gade
Charlotte Amalie
St. Thomas, USVI,  00802
Counsel for Appellant

1

Richard R. Knoepfel, Esq.
Adriane J. Dudley, Esq.
Dudley Clark & Chan
9720 Estate Thomas, Suite 1
Charlotte Amalie
St. Thomas, USVI, 00802

Elliot H. Scherker, Esq.
Julissa Rodriguez, ESq.
Greenberg Traurig
1221 Brickell AVenue
Miami, FL 33131
          Counsel for Appellee

_____

OPINION OF THE COURT

_____

NYGAARD, Circuit Judge.

This case calls upon us to decide whether a conveyance of real property between two subsidiary corporations, each wholly-owned by the same parent, is the equivalent of a "bona fide offer to purchase" triggering a right of first refusal on the property. The District Court answered this question in the negative. We will affirm.

I.

In 1957, Appellant Margaret Creque purchased a tract of land known as Lot No. 1A Estate Demerara, St. Thomas, U.S.

2

Virgin Islands. In 1963, Texaco Antilles Ltd. ("TAL"), a Canadian corporation and a wholly-owned subsidiary of Texaco, Inc., acquired the adjacent Lot No. 1 Estate Demerara. At that time, Creque and TAL entered into an agreement by which TAL sold Creque the northern portion of Lot No. 1, designated as Lot No. 1B Estate Demerara, and granted her the right of first refusal to purchase all of Lot No. 1 "on the same terms and at the same price as set forth in a bona fide offer to purchase . . ." the property. (App. at 1657). TAL also granted Creque the right to take over tenancy of Lot No. 1 and to operate the gas station located upon it in the event of a change in tenancy.

A decade later, in 1973, Canada changed its tax law in a manner that would have resulted in an increased tax liability for TAL of approximately $470,000 per year. To avoid this new expense, general tax counsel for Texaco recommended to Texaco that TAL transfer all its assets and liabilities to Texaco Caribbean, Inc. ("TCI"), another wholly-owned subsidiary of Texaco, incorporated in Delaware. (App. at 1675–78). Accordingly, on September 27, 1973, the Boards of TAL and TCI each approved the sale of TAL's assets to TCI for $5,000

3

and the assumption of TAL's liabilities.[1]  (App. at 1684–91).  It is important to note that the five directors on the Board of TAL comprised five of the six directors of TCI's Board.  The transfer was accomplished by deed on May 16, 1974.

Creque exercised her right to take tenancy of Lot No. 1 as the operator of the gas station in 1987.  Through a dispute over a proposed rent increase, she learned in 1995 of the 1974 transaction between TAL and TCI.  As a result, Creque sought, without success, to exercise her right of first refusal to purchase Lot No. 1.  She then brought the present lawsuit in the Territorial Court of the Virgin Islands against TAL and TCI, seeking damages and specific performance.

TAL and TCI moved for summary judgment, arguing that the conveyance of Lot No. 1 to TCI was an intra-company transfer rather than a sale.  The Territorial Court denied the motion and sent the case to trial.  Prior to trial, the Defendants filed a renewed motion for summary judgment, which the Court

---

[1]  Although the record has some conflicting figures, it appears that TCI ultimately paid TAL $500,000 and gave it a promissory note worth approximately $2.6 million, representing the difference of TAL's assets and liabilities.

also denied. A jury entered a verdict in favor of Creque and the Defendants appealed to the Appellate Division of the United States District Court for the District of the Virgin Islands. A three judge panel reversed the Territorial Court's denial of the renewed motion for summary judgment. It held that Creque "failed to set forth any evidence . . . that a disputed issue of material fact existed regarding whether TCI made a 'bona fide offer to purchase' the property from TAL." (App. at xi). The District Court, therefore, vacated the entry of judgment in favor of Creque and remanded the case to the Territorial Court with instructions to dismiss with prejudice. Creque now appeals.

II.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the grant or denial of summary judgment. *E.g. Curley v. Klem*, 298 F.3d 271, 276 (3d Cir. 2002). Summary judgment is appropriate if, when viewing all evidence in the light most favorable to the non-moving party, and when giving that party the benefit of all reasonable inferences, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id*. at 276–77.

III.

"A right of first refusal is a conditional option empowering its holder with a preferential right to purchase a property on the same terms offered by or to a bona fide purchaser." 17 C.J.S. *Contracts* § 56 (2004); *Crivelli v. General Motors Corp.*, 215 F.3d 386, 389 (3d Cir. 2000) ("A right of first refusal grants the holder . . . the option to purchase the grantor's . . . property on the terms and conditions of sale contained in a bona fide offer by a third party to purchase such property."). We have held that a right of first refusal "cannot be exercised until receipt of a bona fide third party offer." *Gleason v. Northwest Mortgage, Inc.*, 243 F.3d 130, 139 (3d Cir. 2001); *accord Park-Lake Car Wash, Inc. v. Springer*, 352 N.W.2d 409, 411 (Minn. 1984) (holding that as a condition precedent to the exercise of a right of first refusal "the owner must have received a bona fide offer from a third party which he or she is willing to accept"). The agreement entered into by TAL and Creque in 1963 provided that Creque: "shall have the right of first refusal to purchase Lot No. 1 Estate Demerara . . . on the same terms and at the same price as set forth in a bona fide offer to purchase."

6

(App. at 1666). At issue, therefore, is whether there was a bona fide third party offer to purchase Lot No. 1 at some point during the transaction between TAL and TCI. If there was, then the condition precedent to the exercise of the right of first refusal has been satisfied.

There is no case law from this Circuit or from the courts of the Virgin Islands resolving the issue of whether a right of first refusal is triggered by the conveyance of land between related parties. We will therefore look elsewhere for guidance.

The first and most analogous case is *Sand v. London & Co.*, 121 A.2d 559 (N.J. Super. Ct. App. Div. 1956). In that case, a corporation owned by two partners conveyed a parcel of its land subject to a right of first refusal to another corporation, which the two partners also owned. The transaction was prompted by the owners' desire to avoid tax liability and to improve the financial position of both corporations. *Id*. at 518. Reasoning that the same individuals remained in control both before and after the transaction, and that there was no "arms' length dealing" between the buyer and seller—who were in actuality the same individuals—the Court held that the

7

conveyance did not invoke the right of first refusal. *Id.*

The Supreme Court of Colorado employed similar reasoning in *Kroehnke v. Zimmerman*, 467 P.2d 265 (Colo. 1970). The *Kroehnke* Court held that a conveyance of real property by its individual owners to their wholly-owned corporation did not trigger the right of first refusal attached to the property. *Id.* Because the owners of the property essentially sold it to themselves, the Court reasoned that there was no "arms' length sale . . . which customarily characterizes a sale in the open market." *Id.* at 267.

Three years after *Kroehnke*, the Supreme Court of Idaho decided *Isaacson v. First Security Bank of Utah*, 511 P.2d 269 (Idaho 1973). *Isaacson* involved the conveyance of land subject to a right of first refusal from father to son for one-third of the land's market value. The Court held that although the conveyance took the form of a sale, it was appropriate to look beyond formalities to the true nature of the transaction. It held that "[w]hile the transaction at issue partook of the form of a sale, we have no doubt that the trial court was correct in concluding that [in reality] the transfer was more of a gift than a

sale." *Id*. at 272.  Thus, it held that the right of first refusal had not been triggered.

In *Belliveau v. O'Coin*, 557 A.2d 75 (R.I. 1989), the Supreme Court of Rhode Island considered whether the conveyance of land for tax purposes from its individual owner to a corporation she owned with her husband triggered a right of first refusal on the land.  For two reasons, the Court held that it did not.  First, the Court reasoned, the conveyance was effectuated for legitimate tax purposes and was not an "arms' length transaction." *Id*. at 78 (citing *Sand*, 121 A.2d at 562).  Second, the conveyance resulted in no significant transfer of control or ownership to an unrelated third party.  *Belliveau*, 557 A.2d at 78–79.  The Court therefore held that the right of first refusal could not be exercised by virtue of the conveyance at issue.[2]

Most recent is *McGuire v. Lowery*, 2 P.3d 527 (Wyo.

---

[2] For the sake of equity, the Court held that the right of first refusal could still be exercised at some point in the future, if the owning corporation attempted to sell the land to an unrelated party in an arms' length transaction.  We likewise hold that Creque's right of first refusal still encumbers the title to the land.  *See infra*, note 4.

2000).  In *McGuire*, as in *Sand* and *Kroehnke* before, individual owners of real property conveyed land subject to a right of first refusal to their wholly-owned corporation.  The Supreme Court of Wyoming, as in these earlier cases, held that the conveyance did not invoke the right of first refusal.  It held that for a conveyance to "trigger a right of first refusal, it must involve an arms-length transaction resulting in an actual change in control of the burdened property rather than simply moving it from the individual owners to an entity entirely controlled by them."  *Id*. at 532.[3]

From these cases we derive a few general principles.

[3] The *McGuire* Court distinguished *Prince v. Elm Inv. Co., Inc.*, 649 P.2d 820 (Utah 1982), in which the Supreme Court of Utah held that a transfer of property from a sole owner to a partnership in which the owner was one of the two partners did invoke the right of first refusal.  The Court in *Prince* found significant the fact that there had been a change in control of the property because management decisions could no longer be made solely by the original owner, but instead had to be made unanimously by the partners. *Id*. at 821.  By contrast, in *McGuire*, *Sand*, and *Kroehnke* no such change in control took place.  Although in *Belliveau* the change in control of the burdened property appears to have been somewhat similar to that in *Prince*, the Supreme Court of Rhode Island in *Belliveau* found *Prince* distinguishable.  *Belliveau*, 557 A.2d at 79.  It reasoned that no *substantial* transfer of control to an unrelated third party had occurred. *Id*.

First, the absence of arms' length dealing between commercially related parties generally precludes the exercise of a right of first refusal. *See Fina Oil and Chem. Co. v. Amoco Prod. Co.*, 673 So.2d 668, 672 (La. Ct. App. 1996) (citing Harlan Albright, *Preferential Right Provisions and their Applicability to Oil and Gas Instruments*, 32 S.W.L.J. 803, 811 (1978)). Second, and significant for the present case, a right of first refusal is not triggered, "where the evidence indicate[s] that motives of business convenience prompted the transfer of the leased property to the grantor's wholly owned corporation, *or the transfer from one corporation to another corporation owned and controlled by the same interests*." Thomas J. Goger, Annotation, *Landlord and Tenant: What Amounts to 'Sale' of Property for Purposes of Provision Giving Tenant Right of First Refusal if Landlord Desires to Sell*, 70 A.L.R.3d 203 (2005) (emphasis added); *see McGuire*, 2 P.3d at 532; *Kroehnke*, 467 P.2d at 265; *Sand*, 121 A.2d at 559. In each of these situations, the conveyance does not result in a change in ownership or control and therefore does not invoke a right of first refusal on the property.

11

Applying these principles, we hold that the conveyance between TAL and TCI did not trigger Creque's right of first refusal. There was no arms' length dealing and no change in control of the property occurred. It is true, as Creque points out, that the conveyance took the form of a sale (which, she argues, necessarily implies the existence of a bona fide offer to purchase) and was reported as a sale on both TAL and TCI's tax returns. Nevertheless, we must look beyond formalities and accounting entries to the true nature of the conveyance. *Cf. Isaacson*, 511 P.2d at 272 (construing a transaction between father and son as a gift despite the formal appearance of a sale).

The conveyance was directed by the parent corporation, Texaco, so that it could avoid additional tax liability. The record reveals no consideration of any particular benefit for either subsidiary, the formal parties to the conveyance. Also, there is no evidence of the type of negotiation between TAL and TCI that would denote an open market sale. Instead, the terms of the deal were set by Texaco. Finally, and perhaps most significantly, because TAL and TCI had all-but identical boards of directors, the same entity retained control over Lot No. 1 after the

12

conveyance. Moreover, as the parent corporation, Texaco ultimately remained in control of Lot No. 1 at all times. The conveyance was, in reality, a restructuring and not a sale.

A right of first refusal to purchase real property is not triggered by the mere conveyance of that property. Only when the conveyance is marked by arms' length dealing and a change in control of the property may that right be exercised. *See Sand*, 121 A.2d at 559; *McGuire*, 2 P.3d at 532; *Belliveau*, 557 A.2d at 78–79; *Kroehnke*, 467 P.2d at 267; *cf. Pellandini v. Valadao*, 7 Cal. Rptr. 3d 413, 417–18 (Cal. Ct. App. 2003) (holding that the transfer of an interest in real property from one co-tenant to the other did not constitute a "bona fide offer," and therefore did not trigger the plaintiff's right of first refusal). Where, as here, a corporation conveys property from one of its wholly-owned subsidiaries to another in good faith for a legitimate business purpose, there has been no bona fide third party offer sufficient to trigger a right of first refusal on the property. Therefore, the condition precedent to Creque's exercise of her right of first

refusal has not yet been satisfied.[4]

## IV.

The District Court properly determined that TAL and TCI were entitled to judgment as a matter of law. We will affirm.

---

[4] As the conveyance was not a triggering event, it would be inequitable to permit TCI to avoid complying with the right of first refusal should it ever decide to sell the property. Because the original 1963 agreement between Creque and TAL was recorded with the deed and is an encumbrance on the title that "runs with the land," Creque continues to possess the conditional option in question.