**WALLASEY TENANTS ASSOCIATION, INC., et al., Appellants/Cross–Appellees,**

**v.**

**Carol Sue VARNER,[*] et al., Appellees/Cross–Appellants.**

**Nos. 03–CV–763, 03–CV–1037.**

District of Columbia Court of Appeals.

Argued Oct. 26, 2004.

Decided Feb. 16, 2006.

---

[*] At the inception of this appeal, Appellees and Cross–Appellants were Mr. Kenneth Fairbairn and Fairbairn Properties—2426 19th Street N.W., L.L.C. On May 13, 2005, during the pendency of this appeal, Mr. Fairbairn died. Carol Sue Varner, in her capacity as the personal representative of Mr. Fairbairn's estate, has been substituted as the named party in place of the decedent.

Jerome A. Murphy and George D. Ruttinger, with whom John L. Murino, Washington, DC, was on the brief, for appellants/cross-appellees.

Vincent Mark J. Policy, Jr., Washington, DC, with whom M. Ryan Jenness was on the brief, for appellees/cross-appellants.

Douglas G. Green and John D. Clopper, Washington, DC, filed an amicus curiae brief for the Coalition for Nonprofit Housing and Economic Development in support of appellants.

Before WASHINGTON, Chief Judge,** and SCHWELB and FARRELL, Associate Judges.

WASHINGTON, Chief Judge.

Appellant Wallasey Tenants Association ("the Tenants") appeals from the trial court's order granting summary judgment to appellees Kenneth Fairbairn and Fairbairn Properties—2426 19th Street N.W., L.L.C. (referred to jointly as the "Fairbairn Parties") and denying Tenants' motion for summary judgment in a suit arising from Mr. Fairbairn's alleged violation of the Rental Housing Conversion and Sale Act, D.C.Code § 42–3401.01 *et seq.* (2001) ("the Act"). The Tenants contend that the trial court erroneously concluded that Mr.

---

** Chief Judge Washington was an Associate Judge of the court at the time this case was argued. His status changed to Chief Judge on August 6, 2005.

Fairbairn's transfer of property to a limited-liability company controlled by Mr. Fairbairn himself was not a sale that triggered the Tenants' statutory right of first refusal under § 42–3404.02(a) (2001). In a separate action, the Fairbairn Parties appeal from the trial court's order denying their request for attorneys' fees, pursuant to D.C.Code § 42–3405.03 (2001). We disagree, and affirm both decisions of the trial court.

## I.

From April 2, 1962, until December 17, 1999, Kenneth Fairbairn was the sole owner of a seventeen-unit apartment building, the Wallasey, located at 2426 19th Street, N.W., in the District of Columbia. Fairbairn Properties—2426 19th St., N.W., L.L.C. ("19th St. LLC") is a District of Columbia corporation that is 99% owned by Mr. Fairbairn. Fairbairn Properties, L.L.C., a Virginia corporation, owns the remaining 1% of the 19th St. LLC. Mr. Fairbairn is the sole member and owner of Fairbairn Properties, L.L.C.

On December 17, 1999, Mr. Fairbairn transferred ownership of the Wallasey to the 19th St. LLC. Specifically, Mr. Fairbairn transferred a 100% fee simple interest in the Wallasey to the 19th St. LLC for "good and valuable consideration" by special warranty deed executed December 17, 1999. The transaction between Mr. Fairbairn and the 19th St. LLC was made without notice to the Tenants and without giving them a right of first refusal. The transfer of title was recorded in the D.C. Recorder of Deeds office on December 20, 1999. Since 1999, the 19th St. LLC has been the sole owner and title holder of the Wallasey.

In autumn 2002, while searching District of Columbia land records on the internet, the Tenants discovered that the Wallasey had been transferred to the 19th St. LLC. Tenants sent notice to Mr. Fairbairn requesting exercise of the right of first refusal pursuant to D.C.Code § 42–3404.02(a). Mr. Fairbairn, through counsel, informed the Tenants that the right of first refusal was not available because the transfer of the Wallasey was not a sale. Tenants thereafter brought suit.

Tenants allege that Mr. Fairbairn received consideration of value in exchange for the Wallasey, and thus this transfer to a distinct legal entity is appropriately characterized as a sale triggering Tenants' opportunity of first refusal. The Fairbairn Parties admit that transfer of the Wallasey to the 19th St. LLC resulted in benefits to Mr. Fairbairn in the form of limited personal liability and ease in estate planning. The Fairbairn Parties maintain, however, that regardless of benefits received, the transfer of the Wallasey was not a sale and that Tenants' statutory rights of first refusal were not activated.

Both the Fairbairn Parties and the Tenants filed motions for summary judgment and requested that the trial court decide the issue as a matter of law, without further discovery or trial. After extensive briefing, the trial court granted summary judgment in favor of the Fairbairn Parties and held the transfer was not a "sale" under the Act. In light of their victory, the Fairbairn Parties moved for attorneys' fees pursuant to D.C.Code § 42–3405.03. The trial court denied that request. Both parties filed timely appeals.

## II.

Summary judgment is appropriate if, when viewing the record in the light most favorable to the non-moving party, there are no genuine issues of material facts in dispute, and the moving party is entitled to judgment as a matter of law. Super. Ct. Civ. R. 56(c); *see also Abdullah*

*v. Roach,* 668 A.2d 801, 804 (D.C.1995). In reviewing summary judgment decisions, we conduct an independent review of the record and apply the same standard as the trial court in considering whether the motion was properly granted. *See Burt v. First Am. Bank,* 490 A.2d 182, 184–85 (D.C.1985). This court will affirm the trial court's grant of summary judgment if the " 'pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits,' " support the conclusion that there was no genuine issue of material fact. *Urban Masonry Corp. v. N & N Contractors, Inc.,* 676 A.2d 26, 30 (D.C.1996) (quoting *Byrd v. Allstate Ins. Co.,* 622 A.2d 691, 693 (D.C.1993)).

The Tenant Opportunity to Purchase Act, D.C.Code § 42–3404.02 *et seq.,* provides that:

> Before an owner of a housing accommodation may sell the accommodation, or issue a notice of intent to recover possession, or notice to vacate, for purposes of demolition or discontinuance for housing use, the owner shall give the tenant an opportunity to purchase the accommodation at a price and terms which represent a bona fide offer of sale.

D.C.Code § 42–3404.02(a) (2001). This provision of the D.C.Code creates a statutory right of first refusal similar to that which exists in contract law. *Cf.* 17 C.J.S. *Contracts* § 56 (2004) ("A right of first refusal is a conditional option empowering its holder with a preferential right to purchase a property on the same terms offered by or to a bona fide purchaser."). It is undisputed that the Wallasey is a rental accommodation generally subject to the Tenant Opportunity to Purchase Act. It is also undisputed that the Wallasey was transferred by Mr. Fairbairn to a separate legal entity—Fairbairn Properties—2426 19th St. N.W., L.L.C. The issue in contention, however, is whether the transfer of

the Wallasey by Mr. Fairbairn to a corporation wholly-controlled, and effectively wholly-owned, by Mr. Fairbairn himself, is a sale that triggers Tenants' right of first refusal under D.C.Code § 42–3404.02 *et seq.*

Both parties cite to the definition of "sale" stated in *West End Tenants Ass'n v. George Washington Univ.,* 640 A.2d 718 (D.C.1994), to support their respective positions. The parties' respective reliance on *West End* is misplaced because the facts of that case are readily distinguishable from the case *sub judice.* In that case, George Washington University entered into a lease agreement (known as the "Master Lease") with the owners of the West End Apartments for a period of ten years at a rate of $25,000 a month. *Id.* at 723. The university was granted a right to purchase the apartment building at the conclusion of the lease period, subject and subordinate to the tenants' rights pursuant to D.C.Code. *Id.*

> The Master Lease in addition to giving GWU control over all equipment on the premises, supplies, and transferable permits, as well as the right to challenge any real estate assessments, obligated the university to pay all real property taxes and utilities, to perform all maintenance and repairs, and to obtain all non-transferable permits and purchase liability insurance. The owners, besides holding record title, reserved the right to prevent the university from making any alterations, improvements, or additions to the apartment, to reenter the premises in the event of noncompliance with the lease provisions, and to veto any assignment of rights by the university under the lease.

*Id.* at 724. At issue in *West End* was whether the Master Lease qualified as a sale under the Act. We held that the Master Lease entered into did not consti-

tute a "sale" within the meaning of § 42–3404.02(b) of the Tenant Opportunity to Purchase Act because the owners neither conveyed their entire interest nor relinquished their complete control of the apartment to the university. *Id.* at 728. The current case involves a conveyance of property to a closely related party, not the entering into of a lease between an owner and a third party. The two situations are clearly distinguishable.

The unique factual circumstances of the case *sub judice* present us with the question of whether the right of first refusal is triggered by the conveyance of property between two closely related parties such as the Fairbairn Parties. This is a question of first impression in the District of Columbia. Other jurisdictions, however, have faced this very issue, and the rationale employed by those courts to determine whether a sale that triggers a right of first refusal has occurred is very persuasive.

The two most analogous cases are *Kroehnke v. Zimmerman*, 171 Colo. 365, 467 P.2d 265 (1970), and *McGuire v. Lowery*, 2 P.3d 527 (Wyo.2000). In *Kroehnke*, the Supreme Court of Colorado held that a conveyance of real property by its individual owners to a corporation in which the same individuals owned all the stock did not constitute a sale triggering the right of first refusal attached to that property. 467 A.2d at 267. The *Kroehnke* court held that "[a]lthough the corporation issued its stock and a note as consideration for the transfer of title, there is nothing in the record to suggest arms' length dealing between an owner willing (but not forced) to sell, and a buyer willing (but not forced) to buy, which customarily characterizes a sale in the open market." *Id.* The transfer of property to an alter ego of one's self, "solely for the convenience of the lessors in managing the property, is not a sale." *Id.* (citations omitted).

The same analysis was applied by the Supreme Court of Wyoming in the more recent case of *McGuire v. Lowery.* In *McGuire*, as in *Kroehnke* before, individual owners of real property conveyed land subject to a right of first refusal to a wholly-owned corporation. The Supreme Court of Wyoming similarly held that such a conveyance was not a sale that triggered the right of first refusal. The court held that "for a transaction to constitute a 'sale' and trigger a first right of refusal, it must involve an arms-length transaction resulting in an actual change in control of the burdened property rather than simply moving it from the individual owners to an entity controlled by them." *McGuire, supra,* 2 P.3d at 532.[1]

Both *Kroehnke* and *McGuire* derive their reasoning from *Sand v. London & Co.*, 39 N.J.Super. 513, 121 A.2d 559 (Ct. App.Div.1956). In *Sand,* a corporation owned by two partners conveyed land subject to a right of first refusal to another corporation also owned by the same two partners. The motivation behind this transfer of property was a desire to avoid tax liability and improve the financial positions of the two companies. *Sand, supra,*

---

1. The court in *McGuire* distinguished the decision of the Supreme Court of Utah in *Prince v. Elm Inv. Co.*, 649 P.2d 820 (Utah 1982), where that court held that a transfer of property from a sole owner to a partnership in which the owner was one of two partners was a sale that triggered the right of first refusal. The Colorado court found significant the fact that in *Prince* there had been a significant change in control of the management decisions regarding the property because the former manager could no longer make decisions unilaterally, but instead had to act with unanimity with his other partner. It was this significant change in control of the property that triggered the right of first refusal in *Prince.*

121 A.2d at 561–62. The record in *Sand* indicated that financial aspects of the transaction were agreed upon without relation to the fair market value of the property conveyed. *Id.* at 562. There was "nothing about the negotiations of the" buyer and seller—who were the same individuals—to suggest "arms' length dealing" typical of an open market sale. *Id.* Coupled with the fact that the same individuals remained in control both before and after the transaction, the court held that there was no event that triggered the right of first refusal. *Id.*

*Isaacson v. First Sec. Bank*, 95 Idaho 452, 511 P.2d 269 (1973), involved a conveyance of land subject to a right of first refusal from a father to a son for one-third of the land's market value. The Supreme Court of Idaho held that although the transaction had the appearance of a sale—including consideration of value—it was appropriate to look beyond the formalities and accounting to the transaction's true nature. *Isaacson, supra,* 511 P.2d at 272. The court held that the conveyance was not the product of an open market sale from arms' length dealing, and in reality was little more than a gift from a father to his son. Such a gift does not trigger the right of first refusal. *Id.*

The Supreme Court of Rhode Island was confronted with similar questions of law in *Belliveau v. O'Coin*, 557 A.2d 75 (R.I.1989). In that case, land subject to the right of first refusal was conveyed by its individual owner to a corporation she owned with her husband. The conveyance was effectuated as a legitimate means to avoid tax liability. The court reasoned that because the conveyance was not an "arms' length" transaction and resulted in no significant transfer of control or ownership to an unrelated party, it was not a sale triggering the right of first refusal. *Id.* at 78–79.

The United States Court of Appeals for the Third Circuit is the latest court to have dealt with these issues. In *Creque v. Texaco Antilles Ltd.*, 409 F.3d 150 (3d Cir. 2005), the Third Circuit was called upon to decide whether a conveyance of property between two subsidiaries, each wholly-owned by the same parent corporation, was a transaction triggering the attached right of first refusal. The court held that it was not. Specifically, the lack of an arms' length dealing or change in control of the property precluded the exercise of the right of first refusal. *Id.* at 154–55. The record further revealed that the transfer of property was effectuated in order to avoid tax liability. "The conveyance was, in reality, a restructuring and not a sale." *Id.* at 155. Where "a corporation conveys property from one of its wholly-owned subsidiaries to another in good faith for a legitimate business purpose, there has been no bona fide third party offer sufficient to trigger a right of first refusal on the property." *Id.* Therefore, the "condition precedent to exercise a right of first refusal has not been satisfied." *Id.*

 We agree with the preceding analyses, and apply the previous courts' rationale to our jurisdiction's statutory right of first refusal. Specifically, we adopt the following "general principles":

First, the absence of arms' length dealing between commercially related parties generally precludes the exercise of a right of first refusal. Second, and significant for the present case, a right of first refusal is not triggered, "where the evidence indicates that motives of business convenience prompted the transfer of the leased property *to the grantor's wholly owned corporation,* or the transfer from one corporation to another corporation owned and controlled by the same interests." In each of these situations, the conveyance does not result in

a change in ownership or control and therefore does not invoke a right of first refusal on the property.

*Id.* at 154 (citations omitted and original emphasis removed) (new emphasis added); *see McGuire, supra,* 2 P.3d at 532; *Kroehnke, supra,* 467 P.2d at 265; *see also Belliveau, supra,* 557 A.2d at 78–79; *Isaacson, supra,* 511 P.2d at 272; Thomas J. Goger, Annotation, *Landlord and Tenant: What Amounts to 'Sale' of Property for Purposes of Provision Giving Tenant Right of First Refusal if Landlord Desires to Sell,* 70 A.L.R.3d 203 (2005). The previously cited cases from other jurisdictions all dealt with a contractual right of first refusal. The Tenant Opportunity to Purchase Act creates a statutory right of first refusal. This distinction is without moment. *Compare* D.C.Code § 42–3404.02(a) ("Before an owner of a housing accommodation may sell the accommodation . . . the owner shall give the tenant an opportunity to purchase the accommodation at a price and terms which represent a bona fide offer of sale."), *with* 17 C.J.S. *Contracts* § 56 ("A right of first refusal is a conditional option empowering its holder with a preferential right to purchase a property on the same terms offered by or to a bona fide purchaser."). Both rights of first refusal follow the same principles and are subject to the same analyses. The Ten-

ants have cited to nothing in the language or legislative history of the Act that would dictate a contrary conclusion.

■ Applying these principles, we hold that the conveyance between Mr. Fairbairn and the 19th St. LLC did not constitute a sale that triggered the Tenants' statutory rights of first refusal. Although Tenants are correct in stating that the conveyance took the appearance of a sale and was presumably reported as such on, *inter alia,* the deed and various tax filings, we must look at the true nature of the conveyance in this case. *See Isaacson, supra,* 511 P.2d at 272.

The conveyance directed by Mr. Fairbairn to a *de facto* wholly owned corporation[2] was effectuated for no purpose other than to legitimately limit Mr. Fairbairn's liability and to simplify his future estate planning. Furthermore, there is no evidence in the record to indicate any sort of negotiation between the Fairbairn Parties to suggest "arms' length dealing between an owner willing (but not forced) to sell, and a buyer willing (but not forced) to buy, which customarily characterizes a sale in the open market." *Kroehnke, supra,* 467 P.2d at 267. Finally, and most significantly, Mr. Fairbairn remained in ultimate control of the Wallasey at all times. As in the previously cited cases, this conveyance was a restructuring not a sale.[3]

---

**2.** As discussed *supra,* Mr. Fairbairn owned a 99% interest in the 19th St. LLC. The remaining 1% interest was owned by Fairbairn Properties LLC, another corporation wholly owned by Mr. Fairbairn. Mr. Fairbairn, therefore, has 100% *de facto* ownership of the 19th St. LLC.

**3.** Tenants, through their repeated assertions that the conveyance of the Wallasey from Mr. Fairbairn to the 19th St. LLC was a transfer between two legally distinct entities, imply that one would need to disregard the corporation's corporate identity to find the conveyance not a sale. We disagree.

Our holding today does not disregard the 19th St. LLC's *de jure* status as a legal entity separate and distinct from Mr. Fairbairn. The conveyance of the Wallasey to the 19th St. LLC was a transaction between two separate legal entities. Our decision simply holds that based on the historical applications of the contractual right of first refusal, which has been wholly incorporated and codified in the Tenant Opportunity to Purchase Act, such a right is simply not available when closely related parties who do not engage in arms' length dealings convey property for the purposes of estate planning, tax restructuring, limiting liability, or general property management. *See Belliveau, supra,* 557 A.2d at 79

Although our analysis differs in key respects from that of the trial court's, the Fairbairn Parties' motion for summary judgment was properly granted and Tenants' motion properly dismissed.[4]

## III.

■ In a separate action, the Fairbairn Parties appeal claiming that the trial court erred when it determined that they were not "aggrieved" and, thus, were not entitled to attorneys' fees. The decision to award attorneys' fees is reserved to the sound discretion of the trial court and will be reversed only upon a showing of abuse. *See Andrews v. District of Columbia,* 443 A.2d 566, 567 (D.C.1982). The issue before us is whether the trial court erred in refusing to award attorneys' fees to the Fairbairn Parties pursuant to D.C.Code § 42–3405.03.

■ The trial court was correct in determining that the Fairbairn Parties were not "aggrieved" parties, and were thus outside of the Act's allowance of attorneys' fees. The Act states that, "[a]n aggrieved owner, tenant, or tenant organization may seek enforcement of any right or provision under this chapter through a civil action in law or equity, and, upon prevailing, may seek an award of costs and reasonable attorney fees." D.C.Code § 42–3405.03.

A plain reading of the statute indicates that the right to collect attorneys' fees is only available to the party that brought the suit. If the Council intended to allow defending parties to recover attorneys' fees simply by prevailing in the suit, then they would have done so. *Compare* D.C.Code § 42–3405.03, *with* D.C.Code § 16–4603.12 (2001) ("The court shall allow the *prevailing party* ... necessary and reasonable expenses incurred by or on behalf of the party, including ... attorney's fees ....") (emphasis added), *and* D.C.Code § 45–2592 (2001) ("The Rent Administrator, Rental Housing Commission, or a court of competent jurisdiction may award reasonable attorney's fees to the *prevailing party* in any action under this chapter....") (emphasis added).

In this case, the Fairbairn Parties' were not seeking to enforce their own rights; rather, they were defending against an action brought by the Tenants. As such, the Fairbairn Parties had no basis to request attorneys' fees and the trial court did not err in denying the request.

For the foregoing reasons, the judgments of the trial court are

*Affirmed.*

---

(holding that the court need not disregard the corporation's corporate identity as a prerequisite to finding no sale and consequently no right of first refusal).

4. Tenants also allege the trial court erred in relying on the affidavit of Linda Harried, a housing regulation specialist at the Condominium and Cooperative Conversion and Sales Branch ("CCCSB") of the District of Columbia's Department of Consumer and Regulatory Affairs ("DCRA"). Characterizing her opinion of a "sale" as an "administrative agency determination," the Tenants claim that such a determination is in violation of the D.C. Administrative Procedure Act (DCAPA)

which establishes the rulemaking procedures—including notice-and-comment requirements—for all administrative agencies in the District. D.C.Code § 2–501 *et seq.* (2001). Ms. Harried's *ex parte* determination as to what the agency defines a sale to be is, the Tenants claim, either a violation of the DCAPA or not the official interpretation of the DCRA. In either event, Tenants claim that Ms. Harried's opinion should not have been relied on by the trial court.

Our *de novo* review of the grant and denial of the motions for summary judgment did not rely on this affidavit. Therefore, we need not reach the merits of this issue.