**ALCAZAR TENANTS' ASSOCIATION, et al., Appellants,**

v.

**SMITH PROPERTY HOLDINGS, L.P., et al., Appellees.**

**No. 06–CV–914.**

District of Columbia Court of Appeals.

Argued Jan. 7, 2008.

Decided Sept. 17, 2009.

---

Steven A. Skalet, with whom Sandi Farrell, Jonathan K. Tycko, and Hassan A. Zavareei, Washington, DC, were on the brief, for appellants.

Richard W. Luchs, with whom Vincent M. Policy, Gregory T. DuMont, Washington, DC, Michael N. Russo, Jr., and Michael S. Steadman, were on the brief, for appellees.

Before KRAMER and BLACKBURNE–RIGSBY, Associate Judges, and KING, Senior Judge.

KRAMER, Associate Judge:

Through a series of transactions in January and February of 2004, appellee Smith Property Holdings, L.P., relinquished ownership of the Alcazar, a residential apartment building located at 1841 Columbia Road, N.W. Appellants sued Smith Property Holdings, the eventual owners of the property, and the intermediary parties for violations of the District of Columbia Rental Housing Conversion and Sale Act of 1980, D.C.Code § 42–3404.02 *et seq.* (2001) (the "Sale Act"), alleging that they had failed to give appellants the statutorily guaranteed right of first refusal attendant to sales of rental properties. The trial court granted summary judgment in favor of appellees on the ground that the transactions (two, in essence, it concluded) did not constitute a "sale" within the meaning of the Sale Act and, therefore, did not trigger the right of first refusal. Appellants challenge the trial court decision, arguing that one or more of the transactions (or all of them, taken in aggregate) do indeed constitute sales as contemplated by the statute. We affirm.[1]

## I. Standard of Review

When "reviewing the trial court's grant of summary judgment, we consider the evidence in the light most favorable to the non-moving party, and make a *de novo* determination (1) whether any genuine issue of material fact exists, and (2) whether appellees are entitled to judgment as a matter of law." *West End Tenants Ass'n v. George Washington Univ.*, 640 A.2d 718, 725 (D.C.1994) (citing *Dodek v. CF 16 Corp.*, 537 A.2d 1086, 1092 (D.C.1988)). "The moving party bears the burden of establishing both the absence of a material factual dispute and entitlement to judgment as a matter of law. Any doubts about the existence of a factual dispute must be resolved in favor of the non-moving party." *Klock v. Miller & Long Co.*, 763 A.2d 1147, 1150 (D.C.2000) (citation omitted). However, given the clear nature of these completed transactions, we agree with the trial court that there are no genuine issues as to material fact. We are faced only with issues of law.

## II. Background

The transaction in question was a multistep property transfer wherein ownership rights to the Alcazar changed hands from Smith Property Holdings to two other companies. A number of different entities were involved in the property transfer, with multiple transfers and exchanges among them.

### A. The Parties

#### 1. Smith Property Holdings, L.P.

This partnership, a subsidiary of Archstone–Smith, was the owner of the Alcazar at the beginning of the transactions. The property was its sole asset.

---

1. Because we affirm the lower court's decision that appellees did not violate the Sale Act, we need not address appellants' argument regarding whether the District of Columbia Consumer Protection Act is applicable to violations of the Sale Act.

### 2. 1841 Columbia Road Revocable Grantor Trust ("the Trust")

This trust is not properly a party, but an essential component of the transactions. The trust was established with Smith Property Holdings, L.P. named as the initial beneficiary.

### 3. 1841 Columbia Road Custodian LLC ("the Custodian")

Originally owned by Smith Property Holdings, L.P., this entity was made trustee of the 1841 Columbia Road Revocable Grantor Trust.

### 4. 1841 Columbia Road LLC

This LLC was made beneficiary of the trust on Feb. 19, 2004, when the Trustee assigned the beneficial interests of the trust to it.

### 5. 1841 Columbia Road Investors LLC

This independent entity bought a 95% interest in 1841 Columbia Road LLC, also on Feb. 19, 2004.

### 6. FF Columbia Road LLC/ FF Realty

At the same time, this independent entity bought the remaining 5% interest in 1841 Columbia Road LLC.

### B. The Two Transactions

In 2003, Smith Property Holdings decided to sell the Alcazar building for tax reasons. It received an offer to purchase from the Fairfield Companies, but that offer was not countersigned by Smith Property Holdings. Instead, the parties engaged in two separate transactions within a short period of time.

In the first transaction, Smith Property Holdings created the Trust, after which the Custodian was created and named trustee, with Smith Property Holdings as beneficiary. Smith Property Holdings then transferred the Alcazar to the Trust by deeding it to the Custodian to be held in trust for the beneficiary, 1841 Columbia Road LLC. The Custodian then assigned the beneficial interests of the trust to 1841 Columbia Road LLC as beneficiary. The result was that the latter now owned the trust, and hence the Alcazar. But 1841 Columbia Road LLC itself was still owned by Smith Property Holdings, L.P., which had owned the building before the transaction began.

In the second transaction, Smith Property Holdings, L.P., sold the membership interests of 1841 Columbia Road LLC to two entities, 1841 Columbia Road Investors, LLC and FF Columbia Road LLC. The assets conveyed included the Trust, which had the Alcazar as its sole asset. Finally, Smith Property Holdings, L.P., relinquished its interests in the Custodian to 1841 Columbia Road LLC, now owned by the two independent purchasers (1841 Columbia Road Investors, LLC and FF Columbia Road LLC). At the end of these transactions, the two independent purchasers thus controlled both the Custodian and the beneficiary of the Trust, although the Trust retained all property interests in the Alcazar.

### III. Analysis

The issue in this case is a question of law; *viz.*, do either of the transactions, taken separately or in the aggregate, constitute a sale under D.C.Code § 42–3404.02 (2001), as it existed in 2004, when the transactions took place.[2] At that time, D.C.Code § 42–3404.02 had three subsections, only two of which are relevant here.

---

**2.** D.C.Code § 42–3404.02 was amended in 2005, but those amendments apply prospectively only, having an effective date of July 22, 2005, D.C.Code §§ 42–3401.03 to–3404.02 (2008 Supp.), and thus do not apply to the transactions at issue here.

The first subsection specified that "[b]efore an owner of a housing accommodation may sell the accommodation ... the owner shall give the tenant an opportunity to purchase the accommodation at a price and terms which represent a bona fide offer of sale." D.C.Code § 42–3404.02(a) (2001). Absent from this subsection is a definition of "sale" or "sell." We have previously adopted the view, derived from BLACK'S LAW DICTIONARY (6th ed. 1990), that for purposes of this statute, a sale is an absolute transfer of property "whereby property is transferred from one person to another for a consideration of value, implying the passing of the *general and absolute title, as distinguished from a special interest falling short of complete ownership.*" *West End Tenants Ass'n, supra,* 640 A.2d at 727–28; *Twin Towers Plaza Tenants Ass'n v. Capitol Park Assocs., L.P.,* 894 A.2d 1113, 1116 (D.C.2006); *Gomez v. Indep. Mgmt. of Delaware, Inc.,* 967 A.2d 1276, 1282 (D.C.2009).

■ Appellants contend that the first transaction constituted a sale of this sort and triggered the tenants' right of first refusal when Smith Property Holdings, L.P. transferred title to the subject property to Custodian of the Trust, 1841 Columbia Road Custodian LLC. Judge Broderick, however, citing *Wallasey Tenants Ass'n v. Varner,* 892 A.2d 1135 (D.C.2006), ruled that this was not a sale under D.C.Code § 42–3404.02(a), and we agree.

■ In *Wallasey Tenants Ass'n,* we adopted the following general principles:

First, the absence of arms' length dealing between commercially related parties generally precludes the exercise of a right of first refusal. Second, ... a right of first refusal is not triggered, "where the evidence indicates that motives of business convenience prompted

the transfer of the leased property *to the grantor's wholly owned corporation, or the transfer from one corporation to another corporation owned and controlled by the same interests.*" In each of these situations, the conveyance does not result in a change in ownership or control and therefore does not invoke a right of first refusal on the property.

*Id.* at 1140–41 (quoting *Creque v. Texaco Antilles Ltd.,* 409 F.3d 150, 154 (3d Cir. 2005) (emphasis added)). *See Gomez, supra,* 967 A.2d at 1282–83.

These principles apply to the first transaction in this case. At the time of the first conveyance, the beneficiary of the trust was Smith Property Holdings, L.P. The Custodian or trustee was an LLC that had Smith Property Holdings, L.P. as its sole member. Consequently, whether the property's title was transferred to the Custodian or held in trust for the beneficiary, it was not a sale under the Sale Act because absolute title passed either to the original grantor, or to a new entity wholly owned by the grantor. This was a change in the form of ownership, not a sale under D.C.Code § 42–3404.02(a).

Appellants argue that because this transfer originated out of an arms' length transaction (the original but unexecuted purchase agreement between Archstone–Smith and Fairfield), it must be a sale. That argument fails, however, because the transaction is an instance of moving the property from an individual owner to an entity controlled by that same owner, a move that is not a sale under the statute as it existed then. *See Wallasey Tenants Ass'n, supra,* 892 A.2d at 1140–41 (holding that a transfer to the grantor's wholly owned corporation did not result in a change of ownership or control and therefore did not invoke a right of first refusal

on the property).[3] *See also CB Ellis Real Estate Servs. v. Spitz,* 950 A.2d 704, 713 n. 19 (D.C.2008).

■ The second relevant statute, pertinent to the second transaction described above, is subsection (c) of D.C.Code § 42–3404.02, which reads, in relevant part, "the term 'sell' or 'sale' includes the transfer of 100% of all partnership interests in a partnership which owns the accommodation as its sole asset to 1 transferee or of 100% of all stock of a corporation which owns the accommodation as its sole asset to 1 transferee in 1 or more transactions occurring during a period of 1 year from the date of the first such transfer. . . ." We agree with the trial court that, under this subsection, the second transaction likewise was not a sale.

As explained above, in the second transaction the Trust beneficiary, 1841 Columbia Road Investors, LLC, and FF Columbia Road LLC, bought the membership interests of 1841 Columbia Road LLC. When they bought those interests, they each gained part of the beneficiary's assets, which included the trust and its sole asset, the Alcazar. This second transfer was not a sale under the statute because the property was not transferred to a single transferee, as was required to create a sale under the plain language of the statute as it existed then. *See* D.C.Code § 42–3404.02(c).[4] Nothing in the summary judgment record supports a triable inference that the two purchasers were not independent of one another; and they accordingly were not "1 transferee." *Id.*

Because neither of the transfers was a sale under the Sale Act, the tenants' right of first refusal was not triggered as a matter of law, and summary judgment for appellees was proper.

For the foregoing reasons, the order of the trial court is

*Affirmed.*

---

3. This case thus differs in that respect from *Gomez, supra,* where "the . . . transaction was contemplated by, and carried out *in accordance with,* the Stock Sale Agreement, which spelled out the obligations of the parties." *Gomez, supra,* 967 A.2d at 1284 (emphasis added).

4. "[T]he term 'sell' or 'sale' includes the transfer of 100% of all partnership interests in a partnership which owns the accommodation as its sole asset to 1 transferee or of 100% of all stock of a corporation which owns the accommodation as its sole asset to 1 transferee in 1 or more transactions occurring during a period of 1 year from the date of the first such transfer. . . ."