NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1795
_____

KHALIL CHRISTIAN; ALLENCHARLES BURTON,
By his mother and natural guardian Elyanore Davies;
E.D.C., by his mother and natural guardian, Arnette Covert;
D.C. by his mother and natural guardian, Arnette Covert; ARNETTE
COVERT; AUGUSTUS COLLINS; DEVIN GILLIAM

v.

SGT WILLIAM ORR; SGT LEONARD MCDEVITT;
OFFICER BRIAN PATTERSON; TOWNSHIP OF DARBY;
OFFICER GERARD SCANLAN, JR.; BOROUGH OF SHARON HILL;
CHRISTOPHER EISERMAN; BOROUGH OF FOLCROFT

William Orr; Leonard McDevitt, Gerald
Scanlan, Jr.; Christopher Eiserman,

Appellants

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 2-08-cv-02397
(Honorable Gene E. K. Pratter)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 13, 2012

Before: SCIRICA, FISHER and JORDAN, *Circuit Judges*.

(Filed: January 28, 2013)

_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

**I.**

Seven plaintiffs allege multiple constitutional violations against four police officers from Upper Darby Township and Borough of Sharon Hill related to the execution of a search warrant for drugs at Top of the Line Barbershop on December 16, 2005. The warrant was executed on a Friday around 4:30 p.m. when nine people were in the barbershop: barbers Augustus Collins and Devin Gilliam; a 13-year-old boy whom we will call ACB; patrons Khalil Christian, Arnett Covert and her four-year-old and seven-year-old sons, and an unidentified woman with her young son.

At least nine officers entered the shop, allegedly with their guns drawn.[1] The officers were executing a facially valid warrant to search the Top of the Line Barbershop and Darren "Dee" Brown, former owner of the shop, for drugs. Plaintiffs dispute the warrant's validity. Plaintiffs Collins, Christian, Gilliam, ACB and Covert allege officers pressed guns to their heads, ordered them on the ground, cursed at them, shouted racial epithets, and threatened to "blow [their] brains out." Christian, Collins, Gilliam and ACB were all handcuffed and searched. Covert was also searched.

---

[1] The number of officers is disputed, but the District Court found at least five other officers, in addition to the four defendants, participated in the raid. Only four of the officers are defendants in this action: William Orr, Gerard Scanlan Jr., Christopher Eiserman and Leonard McDevitt. Plaintiffs' claims against Darby Township and Folcroft Borough were dismissed with prejudice.

Plaintiffs' complaint included eight counts, alleging all four officers violated their Fourth Amendment Rights in obtaining and executing the search warrant. In addition, plaintiffs Gilliam, Collins and Christian alleged false arrest. All plaintiffs brought a *Monell* claim against the Borough of Sharon Hill. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Defendants moved for summary judgment on all claims. The District Court granted summary judgment to Sharon Hill on plaintiffs' *Monell* claim. The officers were also granted summary judgment on Gilliam and Collins' false arrest claims. The District Court denied summary judgment on all other claims, and defendants appealed. After this appeal was filed, Christian reached a settlement with defendants and withdrew his complaint.

## II.

We have jurisdiction to hear appeals from final orders of district courts. 28 U.S.C. § 1291. Generally a district court's order denying a motion for summary judgment is not a final judgment. *Rivas v. City of Passaic*, 365 F.3d 181, 191 (3d Cir. 2004). But orders denying summary judgment are appealable under the collateral order doctrine when "(1) the defendant is a public official asserting a *qualified immunity defense*; and (2) the issue on appeal is whether the facts alleged by the plaintiff demonstrate a violation of clearly established federal law, not which facts the plaintiff might be able to prove at trial." *Id.* "[W]e lack jurisdiction to consider whether the district court correctly identified the set of facts that the summary judgment record is sufficient to prove…." *Id.* at 192. "[B]ut we possess jurisdiction to review whether the set of facts identified by the district court is sufficient to establish a violation of a clearly established constitutional right." *Id.*

We exercise plenary review of the denial of summary judgment. *Creque v. Texaco Antilles Ltd.*, 409 F.3d 150, 152 (3d Cir. 2005). Summary judgment is proper when the evidence

shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We "view the inferences to be drawn from the underlying facts in the light most favorable to" the non-moving party. *Kopec v. Tate*, 361 F.3d 772, 775 (3d Cir. 2004).

### III.

### A.

Government officials performing discretionary functions are entitled to immunity where their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A defendant has the burden to establish that he is entitled to qualified immunity. *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004). To determine qualified immunity, the court must consider whether the facts alleged, taken in the light most favorable to the plaintiff, "show the officer's conduct violated a constitutional right" and then "ask whether the right was clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

### B.

Defendants contend the District Court failed to determine whether each defendant's conduct violated a clear constitutional right against each plaintiff for each of the counts alleged. "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).

Qualified immunity is not available where a defendant had actual knowledge of and acquiesced to illegal conduct. "The approving silence emanating from the officer who stands by

4

and watches as others unleash an unjustified assault contributes to the actual use of excessive force, and we …. will not immunize such conduct by suggesting that an officer can silently contribute to such a constitutional violation and escape responsibility for it." *Smith v. Mensinger*, 293 F.3d 641, 651 (3d Cir. 2002) (citing *Baker v. Monroe Twp.* 50 F.3d 1186, 1193 (3d Cir. 1995)). Depending on the facts, officers may be liable for the unconstitutional conduct of their colleagues of the same rank, and even superiors. *Id.*

Viewing the evidence in the light most favorable to plaintiffs, all the officer defendants were present in the barbershop when each plaintiff was subjected to the alleged unconstitutional conduct. If so, each defendant may have had actual knowledge of the treatment of each plaintiff by the other officers. At this stage, the District Court found no evidence any of the defendants attempted to intervene to prevent or alter their colleagues' conduct. This does not rule out possible acquiescence. Since plaintiffs raised a genuine dispute of material fact whether each defendant had actual knowledge and acquiesced to each plaintiffs' alleged constitutional violations, defendants are not entitled to qualified immunity at this time. Of course, we express no opinion on the merits of either qualified immunity or liability.

## C.

A person may not be searched absent probable cause. When executing a search warrant, officers must have particularized probable cause to search each person on the premises who is not named in the warrant. *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979). An officer may pat down the outer clothing of a person to detect a weapon when the officer has reasonable suspicion based on specific and articulable facts the person is armed and dangerous. *Terry v. Ohio*, 392 U.S. 1, 29 (1968). A *Terry* frisk may be conducted, and is often necessary, for an officer's safety, but not to

5

discover contraband. *Id.* Where there is no reasonable suspicion to frisk a person for weapons, the frisk cannot create probable cause for further search. *Ybarra*, 444 U.S. at 92-93.

The District Court found genuine questions of fact whether officers had reasonable suspicion to search plaintiffs. Plaintiffs allege they were subdued and secured at the time of the search.[2] Officer Eiserman testified "there was no other threat to me" when he frisked plaintiffs "once [they] went to the ground." Eiserman Depo. at 21:2-6. Since plaintiffs raised a genuine dispute of material fact whether the officers had reasonable suspicion to search all of the plaintiffs, we will affirm the denial of summary judgment.

**D.**

The use of force must be justified by the circumstances. *Graham v. Connor*, 490 U.S. 386, 396 (1989). The standard is objective reasonableness:

> [F]actors include the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time... the physical force applied [by the officers]… the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade
> arrest by flight.

*Estate of Smith v. Marasco*, 318 F.3d 497, 515 (3d Cir. 2003) (citing *Sharrar v. Felsing*, 128 F.3d 810, 821-22 (3d Cir. 1997), *abrogated on other grounds by Curley v. Klem*, 499 F.3d 199 (3d Cir. 2007)) (applying the *Sharrar* factors to evaluate unreasonable use of force in an arrest). If the use of force is objectively unreasonable, officers are not entitled to qualified immunity. *Couden v. Duffy*, 446 F.3d 483, 497 (3d Cir. 2006).

---

[2] The evidence currently indicates all plaintiffs aside from Annette Covert and her children were handcuffed on the ground prior to each search.

On the factual record so far, the crime was not violent or severe (two small drug purchases), at least nine officers controlled five adults and three children, no one resisted arrest or attempted to flee, and the officers used lethal force.[3] But the officers may have had reason to believe someone in the barbershop could have been armed or dangerous, or posed an immediate threat of danger. We recognize that drug raids are fraught with danger and that drug dealers are often armed with deadly force. Because there are genuine questions of fact whether the officers reasonably used force, we will affirm the denial of summary judgment.

**E.**

An officer violates the Fourth Amendment when procuring a warrant if he or she made "a false statement knowingly and intentionally, or with reckless disregard for the truth,… if the allegedly false statement is necessary to the finding of probable cause." *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). A warrant is not invalid if the affidavit provides probable cause absent the false statements. *Id.* at 171-72. The warrant was based on Officer Scanlan's affidavit, allegedly reviewed by Sgt. Orr, stating three small bags of crack-cocaine were purchased in a controlled drug buy on May 11, and a small bag of marijuana was purchased the morning of the December 16 raid. Plaintiffs point to circumstantial evidence the December buy never occurred.[4] The District Court found the December buy was necessary to find probable cause for the search warrant because the May purchase was too remote and involved small amounts of drugs. It also found that plaintiffs raised a genuine dispute of fact whether Officer Scanlan and Sgt. Orr

---

[3] "[H]olding [a] gun to a person's head and threatening to pull the trigger is a use of deadly force." *Jacobs v. City of Chicago*, 215 F.3d 758, 774 (7th Cir. 2000).

[4] Unlike the May 11 controlled buy there are no notes of the surveillance, no record of the cash obtained for the controlled buy, no record of the purchased drugs, and the drugs purchased could not be produced. In addition, officers testified the buy occurred between 10 a.m. and 12 p.m., but the warrant appears to have been signed 10:15 that morning.

7

provided false information that was material to the judicial finding of probable cause to issue the search warrant. We will affirm the denial of summary judgment on this claim.

Nevertheless, the District Court found no evidence "either Sergeant McDevitt or Officer Eiserman might be culpable for false information in Officer Scanlan's Affidavit." *Christian v. Orr*, No. 08-2397, 2011 WL 710209, at \*9 n.35 (E.D. Pa. Mar. 1, 2011). The District Court's order should be amended to clarify that it granted Officer Eiserman and Sgt. McDevitt summary judgment on the claim for procuring the search warrant.

## CONCLUSION

The District Court properly denied summary judgment on the various claims. The court should clarify that its order granted summary judgment to Sgt. McDevitt and Officer Eiserman on the claim for procuring a search warrant with false testimony.